(May 29, 1926.)

MARY QUIRK, Respondent, v. KATE CECELIA BEDAL, JAMES BEDAL, NELLIE PAYNE JOHNSON et al., Appellants.

[248 Pac. 447.]

ATTORNEY AND CLIENT—PRINCIPAL AND AGENT—ESTOPPEL—PLEADING —QUIETING TITLE—APPEAL AND ERROR—EXECUTION SALE.

1. Plaintiff, in action to quiet title, was properly permitted to testify to statements as to title, made to her by defendant's attorney, to whom she was referred by defendant.

2. Where one person refers another on some disputed fact to a third person to answer for him, he is bound by answer made.

3. Technical deficiency in pleading of estoppel is not fatal, if necessary facts are pleaded, and no objection is made to form.

4. Complaint, in action to quiet title, alleging defendant represented and caused to be represented certain facts as to title, is sufficient, in absence of special demurrer, to admit

testimony of representations of title made by defendant's attorney.

5. Evidence, in action to quiet title, *held* to support finding that plaintiff was induced to purchase property at execution sale under defendant's judgment on defendant's misrepresentation that title was good.

6. Findings of fact on conflicting testimony, supported by substantial evidence, will not be disturbed.

7. Where purchaser was induced to purchase property at execution sale on misrepresentations of judgment creditor that title was good, rule of *caveat emptor* does not apply.

8. Owner of real estate, who disclaims title therein to prospective purchaser, is estopped to assert his title against latter, who afterward purchased from third person assuming to be owner.

9. Judgment creditor, who misrepresented title to purchaser of property at execution sale, is estopped to claim interest therein as against such purchaser.

10. Decision of supreme court as to ownership of property in suit cannot be considered in determining appeal from case tried prior to such decision, though based on facts determined on such previous appeal.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Raymond L. Givens, Judge.

Publisher's Note.

2. See 1 R. C. L. 483.

3. Sufficiency of pleading estoppel, see note in 27 **Am. St.** 348. See, also, 10 R. C. L. 844.

6. See 2 R. C. L. 202.

8. See 10 R. C. L. 781.

See Appeal and Error, 4 **C. J.**, sec. 2572, p. 675, n. 57; sec. 2862, p. 893, n. 29.

Attorney and Client, 6 **C. J.**, sec. 146, p. 643, n. 4.

Estoppel, 21 **C. J.**, sec. 142, p. 1140, n. 6; sec. 153, p. 1148, n. 71; sec. 260, p. 1249, n. 54.

Evidence, 22 **C. J.**, sec. 458, p. 385, n. 24.

Executions, 23 **C. J.**, sec. 812, p. 763, n. 2.

Pleading, 31 **Cyc.**, p. 682, n. 80.

Quieting Title, 32 **Cyc.**, p. 1372, **n. 26.**

Action to quiet title. Judgment for plaintiff. *Affirmed.*

Johnson & Nixon, for Appellant.

The testimony of respondent as to the statements she claimed Mr. Johnson made to her was inadmissible, because not pleaded in the complaint as a ground for estoppel. (*Seat v. Quarles,* 31 Ida. 212, 216, 169 Pac. 1167; *Kemmerer v. Pollard,* 15 Ida. 34, 38, 96 Pac. 206; *Davis v. Davis,* 26 Cal. 23, 39, 85 Am. Dec. 157; *Neitzel v. Lawrence,* 40 Ida. 26, 231 Pac. 423.)

It is the established rule that in an estoppel affecting the legal title to land, the following are essential requisites: It must appear (1) that the party making the admission, by his declaration or conduct, was apprised of the true state of his own title; (2) that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; (3) that the other party was not only destitute of all knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge: (4) that he relied directly upon such admission and will be injured by allowing its truth to be disproved. (*Biddle Boggs v. Merced Min. Co.,* 14 Cal. 279, 367, 368; 2 Pomeroy's Equity Jurisprudence, p. 1427, secs. 805, 806, 807, and cases cited; *Davis v. Davis, supra; Morgan v. Lones,* 78 Cal. 58, 61, 20 Pac. 248; *Dean v. Parker,* 88 Cal. 283, 287, 26 Pac. 91; *Hicks v. Post,* 154 Cal. 22, 96 Pac. 878, 880; *Stein v. Leeman,* 161 Cal. 502, 119 Pac. 663, 665; *Central Pacific Ry. Co. v. Droge,* 171 Cal. 32, 42, 151 Pac. 663, 667; *Crary v. Dye,* 208 U. S. 515, 28 Sup. Ct. 360, 52 L. ed. 595; *Brandt v. Virginia Coal & Iron Co.,* 93 U. S. 326, 336, 23 L. ed. 927; *Henshaw v. Bissell,* 18 Wall. (U. S.) 255, 271, 21 L. ed. 835; *Staniford v. Trombly,* 181 Cal. 372, 186 Pac. 599; *Webber v. Axtell,* 94 Minn. 375, 102 N. W. 915, 6 L. R. A., N. S., 194; *Reutzel v. McKinney,* 54 Ark. 465, 16 S. W. 265; *Winslow v. Cooper,* 104 Ill. 235; *Danforth v. Adams,* 29 Conn. 107, 111; *Eaton v. Wilkins,* 163 Cal. 742, 127 Pac. 71, 73; *Gjerstadengen v.*

*Hartzell*, 9 N. D. 268, 81 Am. St. 575, 83 N. W. 230; *Cahoon v. Seger*, 31 Ida. 101, 107, 168 Pac. 441; *Johansen v. Looney*, 31 Ida. 754, 764, 176 Pac. 778; *Brown v. Bledsoe*, 1 Ida. 746; *Eastwood v. Standard Mines Co.*, 11 Ida. 195, 202, 203, 81 Pac. 382.

Estoppel is a protective, not an offensive, weapon, and its operation should be limited to saving harmless or making whole the person in whose favor it arises and should not be made an instrument of gain or profit. (*McLemore v. Bickerstaff* (Tex. Civ. App.), 179 S. W. 536, 538; *Ramsey v. Chilsen*, 57 Cal. App. 785, 208 Pac. 319; *In re Hills Estate*, 79 N. J. Eq. 521, 82 Atl. 338; *Maxwell v. Bay City Bridge Co.*, 41 Mich. 453, 2 N. W. 639; *Townsend Sav. Bank v. Todd*, 47 Conn. 190; *Llano Granite Co. v. Hollinger* (Tex.), 212 S. W. 151; *Green v. Stevenson* (Tenn. Ch. App.), 54 S. W. 1011; *Adler v. Pin*, 80 Ala. 351.)

There must be certainty about the facts to create an estoppel. It never arises from ambiguous facts or those susceptible of two constructions. The alleged fraudulent misrepresentations must be plain, not doubtful or matters of mere inference or opinion. (*Fredenburg v. Lyon Lake M. E. Church*, 37 Mich. 476; *Blodgett v. Perry*, 97 Mo. 263, 10 Am. St. 307, 10 S. W. 891; *Brown v. Bledsoe*, 1 Ida. 746; *Breshears v. Callender*, 23 Ida. 366, 131 Pac. 15; *Nelson v. Hudgel*, 23 Ida. 327, 130 Pac. 85; *Parker v. Herron*, 30 Ida. 327, 164 Pac. 1013.)

In the absence of a sufficient showing to create an estoppel, the rule of *caveat emptor* applied to the respondent, as a purchaser at a judicial sale. (*Glover v. Brown*, 32 Ida. 426, 440, 441, 184 Pac. 649; C. S., secs. 5414, 5423, 5425, 6674; *Brown v. Bledsoe, supra.*)

If the objection that the pleading was insufficient is made at the trial on the introduction of evidence, it is sufficient, but if it is admitted without objection, it will be deemed waived. (31 Cyc. 723, and cases cited; *Lamus v. Engwic*, 39 Cal. App. 523, 179 Pac. 435; *Chicago R. I. Ry. Co. v. Wertheim*, 15 N. M. 505, Ann. Cas. 1912C, 148, 10 Pac. 573, 30 L. R. A., N. S., 771.)

In order to show damage from fraud the purchaser of property must show that the property he obtained was of less value than the price he paid for it. (*Smith v. Neeley*, 39 Ida. 812, 818, 231 Pac. 105, and cases cited.) This rule should have equal application to cases where constructive fraud is charged.

J. R. Smead, for Respondent.

Appellant's judgment against Mrs. Johnson was a valid, unreversed and unmodified judgment at the time of the execution sale and at the time of the trial of this case. As such, its terms were not the subject of attack in such trial, as such an attack would have been collateral. She was therefore bound to try this case in accordance with the terms of that judgment, which vested in her the entire beneficial interest in the property in question. Having actively procured such a judgment and issued execution thereon, she was estopped to deny its terms. (*O'Neill v. Potvin*, 13 Ida. 721, 93 Pac. 20, 257; *Smith v. Kessler*, 22 Ida. 589, 127 Pac. 172; *Kolb v. Swann*, 68 Md. 516, 13 Atl. 379.)

Respondent's rights should be determined and adjudged as of the date of her purchase of and payment for the property in question. (*Goodman v. Minear Min. & Mill Co.*, 1 Ida. 131; *Athey v. Oregon Short Line R. R. Co.*, 30 Ida. 318, 165 Pac. 1124; *Teich v. Kaufman*, 174 Ill. App. 306; *Hinson v. Ralston*, 100 Ill. App. 214; *Jones v. Mitchell*, 83 Ark. 77, 102 S. W. 710; *City of Cleveland v. Cleveland C. C. & St. L. R. Co.*, 93 Fed. 113.)

Under our practice, this court does not try an equity action *de novo*. If the findings of the trial court are supported by some substantial evidence, this court will not review or disturb them. (*Eastwood v. Standard Mines Co.*, 11 Ida. 195, 81 Pac. 382; *Fritcher v. Kelley*, 34 Ida. 471, 480, 201 Pac. 1037; *Neil v. Hyde*, 32 Ida. 576, 186 Pac. 710.)

Equitable estoppel arises when one has made certain statements or claims, or has remained silent when it was his duty to speak, or has in any way actively induced action

on the part of another, who has acted on the strength of such statements, claims, activity or silence. Such a one cannot thereafter set up an inconsistent claim to the prejudice of the other. (*Pomeroy Equity Jurisprudence,* secs. 802, 804; *Mountain Home Lbr. Co. v. Swartwout,* 30 Ida. 559, 166 Pac. 271; *Kirk v. Hamilton,* 102 U. S. 68, 26 L. ed. 79; *Swain v. Seamens,* 9 Wall. (U. S.) 254, 19 L. ed. 554; *Hilton v. Sloan,* 37 Utah, 359, 108 Pac. 689; *Hill v. Wand,* 47 Kan. 340, 27 Am. St. 288, 27 Pac. 988; *Westerman v. Corder,* 86 Kan. 239, Ann. Cas. 1913C, 60, 119 Pac. 868, 39 L. R. A., N. S., 500; *Carruthers v. Whitney,* 56 Wash. 327, 105 Pac. 831; *Seymour v. Oelrichs,* 156 Cal. 782, 134 Am. St. 154, 106 Pac. 88, 94–96; *Keller v. Gerber,* 49 Cal. App. 515, 193 Pac. 809, 812; *Rogers v. Maloney,* 85 Or. 61, 165 Pac. 357, 358; *Allen v. Hance,* 161 Cal. 189, 118 Pac. 527; *Dodge v. Pope,* 93 Ind. 480.)

The deception entailed in false or misleading statements need not be intentional in equity. If the result of afterward setting up a different state of facts than formerly represented expressly or tacitly, will work the same effect as actual, intentional fraud and deceit in the beginning, equitable estoppel will arise. (*Mountain Home Lumber Co. v. Swartwout, supra;* Pomeroy's Equity Jurisprudence, secs. 821, 872, 873.)

Constructive notice from a record of title or the like is not imputed to one who has in good faith believed in and relied upon false representations made by another, and who has so been induced to forego an independent investigation of the matter. (Pomeroy's Equity Jurisprudence, sec. 896 and notes 2 and 3, sec. 810, and notes 4 and "c"; sec. 895, pp. 1856 and 1858; *Eastwood v. Standard Mines Co.,* 11 Ida. 195, 81 Pac. 382; *Graham v. Thompson,* 55 Ark. 296, 29 Am. St. 40, 18 S. W. 58; *Robbins v. Moore,* 129 Ill. 30, 21 N. E. 934; *Dodge v. Pope, supra; David v. Park,* 103 Mass. 501; *Olden v. Hendrick,* 100 Mo. 533, 13 S. W. 821; *Morris v. Herndon,* 113 N. C. 236, 18 S. E. 203; *Wannell v. Kem,* 57 Mo. 478; *Knouff v. Thompson,* 16 Pa. 357.)

Respondent was entitled to have that which it was represented to her she would receive if she bought the property at the execution sale. (*Needles v. Hannifan,* 11 Ill. App. 303; *In re Hill,* 79 N. J. Eq. 521, 82 Atl. 338; *Portland v. Inman-Poulsen Lumber Co.,* 66 Or. 86, Ann Cas. 1915B, 400; 133 Pac. 829, 46 L. R. A., N. S., 1211; *Lucas v. Hart,* 5 Iowa, 415; *Grissler v. Powers,* 81 N. Y. 57, 37 Am. Rep. 475; *Briggs v. Langford,* 59 Hun, 615, 12 N. Y. Supp. 657; *Guffey v. O'Reiley,* 88 Mo. 418, 57 Am. Rep. 424; *Union Bank of Milwaukee v. Commercial Securities Co.,* 163 Wis. 470, 157 N. W. 510; *American Stave & Cooperage Co. v. Butler County,* 93 Fed. 301.)

As to pleading estoppel, it is not necessary that the word "estoppel" or its equivalent be used. (*Carstensen & Anson v. Wright,* 25 Ida. 492, 138 Pac. 830.)

When equitable estoppel is not properly plead, but the case is tried on the theory that equitable estoppel is involved, and no objections to the form or sufficiency of the pleading in that regard are made, any objection to the pleading is waived. (*Brown v. Hardin,* 31 Ida. 112, 169 Pac. 293; *Davis v. Davis,* 26 Cal. 23, 85 Am. Dec. 157; *Weinstein v. Bank,* 69 Tex. 38, 5 Am. St. 23, 6 S. W. 171; *Grey v. Pingry,* 17 Vt. 419, 44 Am. Dec. 345.)

Under such practice as ours, a failure to raise objection of insufficiency by demurrer is a waiver thereof. (*Atkinson v. Lindsey,* 39 Ind. 296; *Olden v. Hendrick,* 100 Mo. 533, 13 S. W. 821, 822.)

HARTSON, District Judge.—This appeal is from a decree quieting respondent's title to two lots in Boise City, Ada county, Idaho. The dispute arose out of an execution sale, initiated by appellant, and the latter's alleged conduct and representations which, it was claimed, induced respondent to bid and purchase at the sale.

In 1917, appellant had begun suit in Gooding county against a Mrs. Johnson, seeking to establish a trust in the lots (and other property), and notice of action was filed in Ada county. In May, 1919, appellant recovered judgment against Mrs. Johnson, which provided, in so far as

material here, for the recovery of $40,000 with interest; that appellant was sole owner of the lots, and directing Mrs. Johnson forthwith to convey the legal title to appellant. Transcript of the judgment was filed in Ada county. In June, 1919, Mrs. Johnson perfected an appeal, but filed no bond to stay execution. In July, 1919, appellant caused execution to issue on the money judgment, and levied upon all ''right, title, claim and interest'' of Mrs. Johnson in the lots. Respondent purchased at the sale on her bid of $5,000, and in September, 1920, received sheriff's deed.

Subsequent to the sale, appellant asserted claim to the lots as against respondent, and the latter brought this suit to quiet her title. The cause was tried by the court. Findings, conclusions and decree were made in favor of respondent. Originally James Bedal and Mrs. Johnson were parties defendant. The former disclaimed. The latter appealed from the judgment, but the appeal was dismissed.

The trial court found that, intervening the levy and sale, appellant requested respondent to bid at the sale, and represented and caused to be represented to her that the lots would be sold; that if she should bid and purchase, her title would be absolutely good. Further, that such representations were knowingly false, that ''then and ever since appellant did and does claim an interest''; that the lots were not then solely owned by Mrs. Johnson, that appellant knew it, and knew respondent would not receive good title; that respondent had no knowledge of the falsity of the representations, but believed them, and relied fully thereon, attended the sale by her agent, and bid the sum of $5,000, the highest and best bid which was accepted and paid in cash through the sheriff to appellant, who ever since has retained it without offer of return.

The court also found that appellant and her attorney personally attended the sale, and appellant bid against respondent's agent, with knowledge that respondent was so bidding, and knowing that respondent was the purchaser; that during the sale neither appellant nor her attorney in any way disclosed appellant's claims to the property.

It was found that appellant's judgment against Mrs. Johnson has at all times been a final judgment, unreversed and unmodified, and no stay of execution has been had, all of which appellant knew, but that notwithstanding, appellant still claims title to the lots under and by virtue of the judgment. That although the *lis pendens* and judgment in *Bedal v. Johnson* were of record in Ada county at time of sale, respondent had no actual knowledge of its terms, except that she knew there was a money judgment for appellant against Mrs. Johnson, on which execution issued; that respondent was induced to forego examination of the records by the false representations.

As conclusions of law, the trial court held, that respondent was the owner in fee simple, and entitled to possession; that respondent was not, as against appellant, bound or affected by constructive notice of the records; that by virtue of appellant's judgment against Mrs. Johnson, and her representations to respondent, she is estopped to claim any interest as against respondent.

The assignments of error considered as of controlling importance are:

(1) Error in permitting respondent to testify to alleged statements of appellant's attorney, as not responsive to any issue, and not pleaded.

(2) Findings are not supported by the evidence, numerous particulars being assigned.

(5) That the trial court erred in holding that appellant was estopped in law by the judgment in *Bedal v. Johnson,* or by any statements shown by the record.

Respondent was permitted to testify to statements alleged to have been made to her by appellant's attorney, in the absence of appellant. Objection was made on the ground that such statements were not pleaded. The pertinent allegations of the complaint are:

" . . . . that said Kate Cecelia Bedal repeatedly and insistently requested this plaintiff to bid on said property at said execution sale when the same should be held, and repeatedly represented, and caused to be represented, to plaintiff that said property was owned solely by the said

Nellie Payne Johnson, that the said Kate Cecelia Bedal and the said James Bedal neither had nor made any claim of right, title or interest in or to said property, and that if this plaintiff should purchase said property at said sale and should thereafter receive a deed for the same, her title under said deed would be absolutely good."

[1] There is evidence in the record that shortly before the sale, appellant referred respondent to her (appellant's) attorney, for information concerning the title, saying: "He will tell you all about it." Having thus appointed the attorney her agent within the scope of the reference, appellant was bound by his statements and representations on that subject no less than if she had made them herself. [2] It is well settled that where one person refers another, on some disputed fact, to a third person, as authorized to answer for him, he is bound by what his referee answers upon the occasion as much as if the answer had been made by himself. (22 C. J. 385; 1 R. C. L., p. 483; 2 Mechem on Agency, sec. 1778; *Evatt v. Hudson,* 97 Ark. 265, 133 S. W. 1023.)

[3] It is urged by appellant that, "as an estoppel *in pais.* may operate to exclude the truth, it should be pleaded with certainty in every particular, and the facts should be set forth with great particularity and precision, leaving nothing to intendment." (*Seat v. Quarles,* 31 Ida. 212, 169 Pac. 1167; 10 R. C. L. 844.) "But technical deficiencies in the pleading are not fatal if all the facts necessary to constitute it are pleaded and no objection is made to the form of the pleading." (10 R. C. L. 844; *Portland v. Inman-Poulsen Lumber Co.,* 66 Or. 86, Ann. Cas. 1915B 400, 133 Pac. 829, 46 L. R. A., N. S., 1211.) [4] The allegation that appellant "represented and caused to be represented" afforded appellant notice that respondent would rely upon statements made by others at appellant's instance, and, in the absence of special demurrer for uncertainty, the complaint is sufficient to admit testimony of representations of the attorney within the scope of the reference. We therefore think no error was committed in that respect.

[5] Exceptions are taken to the sufficiency of the evidence to support the findings. In the light most favorable to respondent, it is shown that the latter had known appellant intimately for many years, and appellant had traded at the store where respondent worked. After recovering judgment against Mrs. Johnson in Gooding county, appellant spoke of it to respondent, told her about the $40,000 money judgment, and that she was proceeding to "make" the judgment; the lots were to be sold at an execution sale, and she wanted respondent to have the property; respondent had been very good to her, and appellant had spoken to her attorney about it, and it could be had at a "bargain." Appellant brought up the subject repeatedly, five or six times, while the sale was being advertised, and always insisted that if respondent should buy, she would get a good title, that it would be "cheap," and a "bargain." Appellant finally requested respondent, who inquired specially about the title, to see her (appellant's) attorney about it, and she had already mentioned respondent's prospective call to him; that respondent called upon appellant's attorney, said she had come at his client's request, and he said his client had spoken to him of her probable call; that during the ensuing conversation, the attorney told her of his client's money judgment, on which the levy had been based, that respondent would get a deed after a year, and the title would be "all right." The attorney said Mrs. Johnson had appealed, but the time for appeal had expired, and he was preparing a dismissal, was going to ask for a dismissal of the appeal. The attorney asked how much respondent intended to bid, and she didn't know; he said the property was worth $10,000, and she wouldn't pay that; he asked her how much she would bid, and she didn't know. Respondent knew nothing about the title herself, and had never seen the records, or any abstract. Appellant again talked with respondent a day or two before the sale, and was told that respondent would perhaps attend. Respondent relied on the statements of appellant and her attorney, believed them, and consequently made no further inquiry on her own part. Respondent was represented at

42 Idaho—37

the sale by a Mr. Hawes, who was sufficiently well known to appellant to be called by his first name. Hawes talked with appellant, who was present with her attorney. Appellant asked whether respondent was coming to the sale, and he told her that he was representing respondent. Appellant's attorney bid against Hawes, and ran up the bid to the last one, there being no others bidding. When Hawes' bid reached $5,000, appellant and her attorney stepped aside and conferred, and appellant was advised by her attorney to accept Hawes' bid. The property was then declared sold. Neither appellant nor her attorney gave any notice or intimation that appellant laid any claim to the property. After ascertaining that the taxes were paid, respondent paid her bid in cash, received her certificate, and later her deed.

It would serve no useful purpose here to enter into an elaborate discussion of all the various particulars wherein it is claimed the evidence fails to support the findings. Taking into account what seem to us the only reasonable inferences that could have been drawn by respondent from the statements of appellant and her attorney, as described by respondent, we think the evidence sufficient to sustain the findings. While it is urged that it is not shown that appellant represented Mrs. Johnson to be the sole owner, it is only by virtue of such ownership that good title could have passed to a purchaser at the sale, since the levy ran only against the "right, title, claim and interest" of Mrs. Johnson.

[6] The testimony is conflicting, but there is substantial evidence to support the findings. The court below heard the witnesses, and was in superior position to pass upon their credibility. In conformity with a long and unbroken line of precedents in this court, the findings of fact will not be disturbed.

[7] Appellant urges that the records were open for respondent to determine for herself what she was buying, and, in a word, that the rule of *caveat emptor* applies. But the inducements to bid, the representations found to have been made by appellant as to title, together with the

fact that appellant was present at the sale, bidding against respondent, without disclosing her claims of title, were calculated to mislead the respondent and would operate as a fraud upon her if held not to estop appellant from now setting up a claim superior to that of respondent. The fact that records were available to respondent will not, under these circumstances, aid appellant. In *Eastwood v. Standard Mines & Milling Co.*, 11 Ida. 195, 81 Pac. 382, it was held, under substantially similar facts:

"It seems to be in harmony with the trend of authority to say that a person may rest upon the constructive notice which the record of his title imparts, and that he is under no duty or obligation to give any other notice to anyone who assumes to deal with other parties in reference to such property. He may remain silent and passive. (Citing authorities.) But so soon as he becomes active, his actions, declarations and conduct with reference to the title must not be such as to deceive or mislead a reasonable person, or deter, prevent, or dissuade him from examining the title. (Citing authorities.) And if his conduct be such as to amount to a fraud upon one dealing with or in reference to the property, the one to whom such conduct is imputable will be estopped from thereafter asserting title in himself contrary to his previous declarations, action or conduct."

Again, in *Mountain Home Lumber Co. v. Swartwout*, 30 Ida. 559, 166 Pac. 271, the court said:

" 'A strong case of estoppel is made out when by conduct or representation an owner encourages another to believe that a third person is the owner of land, and thereby induces him to purchase. . . . . A difference is recognized by some of the authorities between mere silence and encouragement. In the latter case, the owner's representations or conduct will stop him though he may have been ignorant of his title, for though there may have been no fraudulent intent, yet the assertion of his title would operate as a fraud, in the same manner as if there had been a fraudulent purpose.' (10 R. C. L. 781; *Kirk v. Hamilton*, 102 U. S. 68, 26 L. ed. 79.) "

[8] The principle stated in those cases is in line with the overwhelming weight of authority elsewhere. Many of the leading authorities, including the Eastwood case, supra, are annotated in the note: 48 L. R. A., N. S., 745. There it is said to be the general rule, that an owner of real estate who disclaims title therein, to a prospective purchaser, is estopped to assert his title against that which the latter afterward purchases from a third person who assumes to be the owner. In *Amyx v. Hurt,* 24 Ky. Law Rep. 291, 68 S. W. 420, the court says:

" . . . . It is a well-settled principle of equity that, if anyone having title to land induces another to purchase it from one who has no title, he will not thereafter be permitted to assert his title to the detriment of the purchaser."

In *Stivers v. Gardner,* 101 Iowa, 85, 69 N. W. 1140, it was held that one who induces another to purchase by disclaiming title, and afterward receives a part of the purchase money, is estopped to set up his own title to the purchaser's prejudice.

In *Whitman v. Bolling,* 47 Ga. 125, defendant bid and purchased at an execution sale, at which plaintiff was one of the principal bidders against defendant, in fact made the bid next preceding the last and purchasing bid of the defendant. The court held that the plaintiff's failure to give notice that he claimed that the lien (which, under the evidence, did at one time exist upon the property) was divested, coupled with the fact that he was present, bidding upon the property, was well calculated to mislead the defendant, and would operate as a fraud upon him if held not to estop plaintiff from now setting up a claim superior to the lien of the judgment against the former owner.

In *Gregmoore Orchard Co. v. Gilmour,* 159 Mo. App. 204, 140 S. W. 763, it was held:

"The general rule is that a person who stands by at a judicial sale when his property is being sold as the property of a third person, and makes no objection, but permits purchasers to buy the same, believing that the prop-

erty belonged to such third person, will be estopped from claiming the property against such purchaser.''

And in Wimbish v. Mayer, 144 La. 865, 81 So. 373, the court said:

"Under our well-settled jurisprudence, where one stands by and sees his property sold under legal process, without making his claim known, or objecting thereto, he will be bound by the sale; and a fortiori does that rule apply against one who, by his affirmative representations, induces another to buy property to which he afterwards asserts a claim as owner."

[9] The principle declared in these authorities is, we think, decisive of this case, and we find no error in the decision of the trial court that, under the facts as found by it, appellant is now estopped to claim an interest in these lots as against respondent.

[10] In appellant's briefs, appear numerous references to a decision of this court on appeal in the case of Bedal v. Johnson, which was handed down long after trial and decree herein. Such decision does not appear in the record before us; and cannot be considered. The only matter for determination here is whether, on the record, the court below committed error which ought to be corrected under the rules governing proceedings on appeal; we are not at liberty to interpolate into it any matter which did not form an element in the case as it was presented below. We will not presume that the facts in this case have changed in any respect since the decision of the trial court.

Judgment is therefore affirmed, with costs to respondent.

Wm. E. Lee and Taylor, JJ., concur.

WILLIAM A. LEE, C. J., Dissenting.—Respondent, Mary Quirk, commenced this action to quiet title to lots 7 and 8, block 89, in the city of Boise, which is a two-story residence property that was of the value of $11,000 at the time the case was tried.

Appellant, Kate Cecelia Bedal, had, in 1917, brought an action in the district court in Gooding county, against

Nellie Payne Johnson, wherein, among other things, she. had recovered a money judgment for $40,000, against Nellie Payne Johnson, and certain interests in real property the title to which stood upon the records in the counties where the same was situate in the name of Mrs. Johnson, and included the premises involved in this action. The judgment of the district court in Gooding county directed defendant Johnson to convey these premises, with other property, to Mrs. Bedal, but she failed to do so, and after the entry of the judgment she perfected an appeal from the same to this court and left the state, remaining beyond the jurisdiction of its courts for a number of years and during the pendency of this action.

The final decision in that action is reported in *Bedal v. Johnson,* 37 Ida. 359, 218 Pac. 641, and it holds that Nellie Payne Johnson was the owner in fee of an undivided one-half interest in said premises, reversing the judgment of the district court in Gooding county, which had held that Mrs. Johnson owned only the legal title and that the beneficial or equitable title was in Mrs. Bedal. When that action was commenced in Gooding county, a *lis pendens* was filed in Ada county, where this and other property involved in that action was situate. The district court appointed Hon. Isaac N. Sullivan, receiver, and directed him to take possession of all the property included in the suit of *Bedal v. Johnson, supra,* which was accordingly done and the receiver maintained possession and control of the same during the pendency of this action, but was not made a party to it. Nellie Payne Johnson did not give a *supersedeas* to stay the judgment against her, and Mrs. Bedal, being unable to enforce the same according to its terms, by reason of the absence of the defendant Johnson, caused an execution to be issued upon her money judgment against the interest of Nellie Payne Johnson in the real estate located in Ada county. The execution particularly described the interest being sold as:

" . . . . all the right, title, claim and interest of Nellie Payne Johnson, the judgment debtor, in and to the follow-

ing described real property standing upon the records of said county of Ada in the name of Nellie Payne Johnson, judgment debtor, which said property is particularly described as follows, to-wit: Lots numbered seven (7) and eight (8) in block numbered eighty-nine (89) of the Original Townsite of Boise City . . . . " .

The sheriff duly noticed the property for sale and in the notice limited the interest being offered for sale to the interest of Nellie Payne Johnson, and at the sale, had August 30, 1919, stated that this was the interest being sold under the execution. Respondent, Mary Quirk, purchased this interest of Nellie Payne Johnson at this sale and the sheriff issued to her a certificate of sale in the usual form, but limiting the interest purchased to the interest of Nellie Payne Johnson. At the expiration of the period of redemption, the sheriff's deed in like manner described the interest being conveyed by virtue of such sheriff's deed, as all the right, title, claim and interest of Nellie Payne Johnson.

Respondent Mary Quirk brought her action against Kate Cecelia Bedal, her husband James Bedal, Nellie Payne Johnson, and the unknown heirs of O. P. Johnson, the deceased husband of Nellie Payne Johnson. The complaint, *inter alia*, alleges that plaintiff is the owner and entitled to the possession of said premises; that defendants claim some interest therein adverse to her, which is without right; that she deraigned her title from Nellie Payne Johnson, who was the owner in fee simple and in possession until plaintiff acquired her right under the execution sale in the Gooding county action; that she purchased this property at such sale for $5,000 and subsequently received the sheriff's deed for the same; that prior to the sale defendant Bedal repeatedly requested her to bid at the sale, and represented and caused to be represented to her that Nellie Payne Johnson was the owner of the property and that she, Bedal, claimed no interest therein; that if plaintiff should purchase this property and receive a sheriff's deed for the same, her title would be absolutely good. It is further alleged that these representations were false and were

known to be false by Mrs. Bedal when she made the same; that plaintiff did not know that such representations were false but believed and relied upon them.

Defendant Johnson demurred generally, and defendant Bedal generally and specially, on the ground that the complaint did not state any facts to entitle plaintiff to equitable relief and that it was insufficient and uncertain with reference to the alleged representations plaintiff relied upon to create an estoppel. The demurrers being overruled, Mrs. Bedal answered and specifically denied all of the alleged misrepresentations but alleged that she had an interest in this property, and set up all the facts and circumstances pertaining to the property involved in the suit between herself and Nellie Payne Johnson in Gooding county material to this action and about which plaintiff claimed to have been deceived, and alleged that they were all matters of public record in Ada county and equally accessible to plaintiff and that she had both actual and constructive notice of defendant's interest in the premises that was being sold, and also, of the interest that defendant Johnson claimed. She further alleged that when she learned that respondent claimed to have been mistaken about the interest she had purchased at this execution sale, appellant Bedal offered in writing to have the property sold and out of the proceeds plaintiff might first be paid the $5,000 she had bid with interest; that the property was worth $10,000 and that it would be inequitable and unconscionable for the court to permit plaintiff to acquire the interest of both of these defendants for half the value of the property, which offer respondent rejected. Nellie Payne Johnson filed a separate answer and denied all the equities of plaintiff's complaint and alleged that plaintiff had both actual and constructive notice of all of the facts pertaining to the title to this property at the time she purchased the same.

Defendant Bedal, in her answer, pleaded that the property was in the possession of the receiver and that such receiver had not been made a party to the action, nor had permission to sue him been obtained from the court appointing such receiver, and denied the right of the court

to proceed in this state of the record. Defendant Johnson prayed that the hearing of the case be suspended until the appeal in the case of *Bedal v. Johnson, supra,* could be heard and the title to this property finally determined. The court denied both of these motions and proceeded to try the cause apparently upon the theory that the judgment of the Gooding county action, upon which the execution sale had been made, was a final judgment that fixed the status of the title to the property, although there was a stipulation in this action that the case was then pending on appeal to this court and that the property was in the possession and control of the receiver in that action.

The trial court overruled the contention of defendant Nellie Payne Johnson that the suit was premature and held that upon the record itself appellant Bedal was estopped from claiming any interest in the property and that the whole title thereto should be quieted in respondent Quirk upon the theory that the judgment of the lower court in the Gooding county action was a final judgment, so far as respondent's action was concerned, that fixed the status of the title of the property sold at the execution sale. The court's preliminary memorandum decision, quoted in appellant Bedal's brief, stating that its ultimate conclusion would be for respondent Quirk and directing findings and conclusions to be drawn, shows that the court took this view of the law, for it says:

"Defendant Bedal rests her right to retain the five thousand dollars which she received, upon the execution and sale had thereunder. She is consequently estopped to deny any irregularity in the execution proceedings. The execution in turn depends for its efficacy upon the judgment. This judgment defendant Bedal obtained, and therefore is estopped to deny its validity and cannot dispute the terms of the judgment."

The third finding contains the following:

"That said judgment then was, and ever since has been a final, valid, subsisting judgment of a court of competent jurisdiction, unreversed and unmodified."

Some doubt seems to have arisen about the correctness of this conclusion of law being sufficient to sustain the judgment for the court later said:

"If, in the case at bar, the court should not find upon the issue of fraud, and the case were appealed and the supreme court should hold that the other conclusions of the court based upon estoppel on the record were improper, the supreme court might well say that if the court had found upon the issue of fraud the judgment might have been sustained upon that ground in favor of whichever party the court might have found. It would seem from the application of this rule that the issue of fraud was therefore a material issue.

"I have accordingly signed the findings as submitted by plaintiff with some modifications thereof."

Where a court has erroneously held that the record facts show constructive fraud sufficient to create an estoppel *in pais* and support a decree taking the real property of one party and giving it to the other, the possibility of a reversal of such holding by a reviewing court affords no reason in law for the court to allow the prevailing party to add to the record additional findings of actual fraud in order to reinforce such erroneous decree and avoid a reversal.

After Mrs. Bedal's recovery of a judgment against Mrs. Johnson and her departure from the state holding the legal title to this property, Mrs. Bedal clearly had a right under C. S., sec. 6917, to levy upon and have sold Mrs. Johnson's interest in this property, whatever it might be. This section provides, "All goods, chattels, moneys and other property, both real and personal, or any interest therein of the judgment debtor, not exempt by law, and all property and rights of property," are subject to sale under execution. When this section of our statute was taken from California Civ. Proc., § 688, its courts had construed the words "real property" as therein used, to be coextensive with lands, tenements and hereditaments, and embraced all titles, legal or equitable, perfect or imperfect,

executory or executed, and that any such interest or claim of interest was subject to execution sale. (*Leese v. Clark*, 20 Cal. 387; *Kennedy v. Nunan*, 52 Cal. 326; *Leroy v. Dunkerly*, 54 Cal. 452.)    As to what the term "property" comprehends, as applied to lands, see *Soulard v. United States*, 4 Pet. (U. S.) 511, 7 L. ed. 938.)

The judgment which Mrs. Bedal had obtained against Mrs. Johnson, not having been in any manner stayed, she not only had a right to levy upon and sell the interest of Mrs. Johnson, but she also had a right to rely upon the well settled and nearly universally applied rule stated in 23 C. J. 746, § 789 : "Purchasers at execution sales must take notice of the title for which they bid. The doctrine of *caveat emptor* applies.    There is no implied warranty of title."    See authorities cited in notes 11 and 12 in support of this text, showing that practically every jurisdiction in the United States has so held.    This court so held in *Glover v. Brown*, 32 Ida. 426, 184 Pac. 649.

Hence, the holding in the instant case that appellant Bedal, by causing an execution sale of the interest of Mrs. Johnson in these premises, is thereby estopped as against the purchaser to assert her own interest in this property, is contrary to all authority.

C. S., sec. 6939, was taken from California C. C. P., sec. 708, and provides a definite and certain remedy for any purchaser at an execution sale of real property, who has mistakenly or by fraud been induced to purchase such property, where the title thereafter fails by reason of a reversal or discharge of the judgment. This statute has been construed in *Cross v. Zane*, 47 Cal. 602, followed in *Hitchcock v. Caruthers*, 100 Cal. 100, 34 Pac. 927, and *Merguire v. O'Donnell*, 139 Cal. 6, 96 Am. St. 91, 72 Pac. 337, and held to be remedial in character, and should be liberally construed so that if the property sold was not the property of the defendant in the execution, it amounted to a sale of property not subject to execution and sale within the intent of the statute and that the purchaser was entitled to recover the purchase price paid. This

court has followed this construction in *Cantwell v. McPherson*, 3 Ida. 321, 29 Pac. 102; *Lewiston Nat. Bank v. Tefft*, 6 Ida. 104, 53 Pac. 271; *Diamond Bank v. Van Meter*, 18 Ida. 243, 21 Ann. Cas. 1273, 108 Pac. 1042.

It is erroneously contended that if respondent Mary Quirk, is not protected in this action, it would result in her obtaining nothing of value by her purchase at this execution sale. Appellant Bedal had bid approximately $5,000 for Nellie Payne Johnson's interest in this property, and respondent, making the next higher bid of $5,000, obtained the certificate of sale. It is apparent that Mrs. Bedal regarded the interest of Mrs. Johnson as worth the amount she bid for it. Respondent had the right, under C. S., sec. 6939, to recover the amount she bid, if the title failed by reason of any irregularity in the execution, or fraud or misrepresentation made to her by the execution creditor. She therefore had a complete remedy under this statute to recover back the amount she paid if, in fact, she had been deceived or defrauded. In addition to this, appellant, when she found that respondent claimed to have been defrauded, offered that the entire property, including appellant's interest, might be sold and out of the proceeds respondent should first be paid her money with interest, which offer respondent rejected.

It must be apparent why respondent Quirk refused to consent that both the Bedal and Johnson interests, which included the entire property, be sold and out of the proceeds take her money, or to avail herself of the remedy under this statute, and began this action and alleged that she had been fraudulently induced to make the purchase by Mrs. Bedal, who, she claimed, should be estopped from asserting her title because of such fraudulent representations. If respondent Quirk could, in that manner, induce a court to sustain her contention, she would secure this entire property for half its value. If she failed to do that and this court in the Bedal-Johnson appeal gave the property to the appellant in that action, the entire property would vest immediately in her because of her purchase of

this interest at the execution sale, and finally, if she failed to get the whole of this property by either of these methods, her remedy to recover the money with interest, under C. S., sec. 6939, would protect her from the loss of any of the money she had put into this venture.

It is difficult to conceive of how, under this state of facts, all of which are record facts, her complaint for equitable relief presents any question that should appeal to the ''conscience of the chancellor,'' that is or always should be governed by the principles of equity, which, in their broad sense, signify natural justice. To take from appellant a valuable property interest and give it to respondent, under the admitted facts disclosed by this record, is neither natural justice nor justice at all, and is contrary to both law and equity.

Over objection respondent was not only permitted to relate conversations claimed to have been had with appellant, but also a conversation claimed to have been had with her attorney, although there is nothing in the complaint with reference to such alleged conversation with her attorney, nor are any of the facts relied upon to constitute such estoppel set out with any degree of particularity. In *Seat v. Quarles*, 31 Ida. 212, 169 Pac. 1167, the question of the sufficiency of pleadings arose under a like situation and the case was reversed, the court saying:

''If the respondents had intended to claim that appellant was estopped from asserting his mortgage lien by reason of any conduct or conversation had in reference thereto, this defense should have been specially pleaded, and the facts relied upon as constituting an estoppel should have been alleged with the most careful particularity. The broadly stated rule to which a pleading must conform is that, 'as an estoppel *in pais* may operate to exclude the truth, it should be pleaded with certainty in every particular, and the facts should be set forth with great particularity and precision, leaving nothing to intendment.' (10 R. C. L. 844).''

In *Kemmerer v. Pollard,* 15 Ida. 34, 96 Pac. 206, the rule with regard to the manner in which deceit and false representations must be pleaded, in order to affect the validity of a sale, is thus announced:

"The law is well settled that where a party seeks to recover on the grounds of deceit and false and fraudulent representations, that he must' plead the particular representations that were made and that they were false and fraudulent and material, and that the party injured believed and relied on such statements. . . . . It must also appear as to whether or not the party, in fact, relied and acted upon the false and fraudulent representation . . . . *not knowing or having equal means of knowing of its falsity."*

The allegations of the complaint were clearly insuffiicent to admit this testimony over the objection of appellant. (*Davis v. Davis,* 26 Cal. 23, 85 Am. Dec. 157; *Jackson v. Collins,* 39 Mich. 557; *Williams v. Hall,* 207 Mo. App. 432, 230 S. W. 126; *Kimble v. Gillard,* 177 Mich. 250, 143 N. W. 79.)

Estoppel *in pais,* in order to affect the legal title to land, requires: (1) That the party making the admission, by his declaration or conduct, was apprised of the true state of his own title; (2) that he made the admission with the express intention to deceive, or with such careless or culpable negligence as to amount to constructive fraud; (3) that the other party was not only destitute of all knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge; (4) that he relied directly upon such admission and will be injured by allowing its truth to be disproved.

The leading case in support of this doctrine is *Biddle Boggs v. Merced Mining Co.,* 14 Cal. 279. This case has been approved by the United States supreme court in *Henshaw v. Bissel,* 18 Wall. (U. S.) 255, 21 L. ed. 835, and in *Brandt v. Virginia Coal & Iron Co.,* 93 U. S. 326, 23 L. ed. 927. This is the rule in all the federal courts and in the majority of the state courts. In Pomeroy's

Equity Jurisprudence, 3d ed., vol. 2, p. 1433, the author gives the reason for the rule to be that while the owner of land may by his acts *in pais* preclude himself from asserting his legal title, it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. It is opposed to the letter of the statute of frauds and it would greatly tend to the insecurity of titles, if they were allowed to be affected by parol evidence of light and doubtful character. In *Davis v. Davis,* 26 Cal. 23, 85 Am. Dec. 157, the court says:

"The doctrine of estoppel *in pais* should not be too readily extended when the effect of it is to divest men of their estates in lands. It should be remembered that we have a statute which makes a writing essential to the assignment or creation of an estate in real property, and that one of the objects of such statute was to render estates secure."

The rule of evidence for establishing title by estoppel *in pais* is the same as for establishing a resulting trust, both being a title created by operation of law out of the acts and conduct of the parties and contrary to our statute which declares that a title or interest in real estate can only be created by an instrument in writing.

*Rice v. Rigley,* 7 Ida. 115, 61 Pac. 290, cited in 23 A. L. R., at page 1521, supports the doctrine that to establish a title as a resulting trust by parol, "the evidence must be so clear and certain as to leave no well-founded doubt upon the subject." In the extensive notes to *Lefkowitz v. Silver,* 182 N. C. 339, 23 A. L. R. 1491, pp. 1517 to 1524, 109 S. E. 56, the doctrine that merely a preponderance of evidence is insufficient and that a resulting trust must be established beyond a doubt and by evidence that is conclusive, is shown to be the well-nigh universal rule, and there is virtually no responsible authority holding that a preponderance of evidence is sufficient.

The rule of law for creating a title by estoppel comes within the same principle of law and for the same reason.

A title cannot be created by estoppel except it be done under the rule announced in *Rice v. Rigley, supra,* that the evidence must be so clear and certain as to leave no well-founded doubt on the subject, or as stated by most of the courts, the evidence must establish the claim beyond a reasonable doubt. Hence, the decisions of the courts, blandly referred to, holding that where there is any evidence to support the findings of the court below, this court will not disturb such findings, have no application where the title is sought to be established by estoppel, because such title must be established by evidence so clear, certain and convincing as to leave no well-founded doubt.

The evidence in this case does not even by a preponderance support the findings, much less is it sufficient to establish an estoppel *in pais.* The undisputed evidence shows that respondent did not rely upon representations made to her by appellant, but that she employed a lawyer to look up the records and that he made statements to her sufficient to cause her to make an inquiry. Respondent admits that her attorney suggested that she have the records examined before she paid her money. A *lis pendens* of the Bedal-Johnson action was filed October 1, 1917, and a copy of the judgment was filed in Ada county, May 14, 1919, and respondent had constructive notice of all that this record contained.

The third finding, wherein it is said that the judgment in the Bedal-Johnson case was final, is directly contrary to the record, because an appeal was then perfected and the judgment was subsequently modified and reversed in part in this court.

The trial court says that, "where loss must fall on one of two equally innocent parties, or parties with equal knowledge, the loss should fall on the moving party." This maxim has no application to the facts of this case, because respondent Quirk did get an interest in the property, purchased at the execution sale. The interest she purchased at this sale was all the right, title and interest of Nellie Payne Johnson, who had owned the legal

title and an undivided half interest in the beneficial title since her husband's death. It is a fundamental rule of equitable estoppel that it extends only so far as may be necessary to protect from loss the party entitled to assert it. The maxim that where loss must fall on one of two equally innocent parties, it should fall on the moving party, has no application where it affirmatively appears that there is no loss. The party who invokes estoppel must be able to point to some injury he will sustain if the truth is told. *McLemore v. Brickerstaff* (Tex. Civ. App.), 179 S. W. 536; estoppel is never intended to work a gain to a party; its office is to protect him from a loss which, but for the estoppel, he could not escape. *Ramsey v. Chilson,* 57 Cal. App. 785, 208 Pac. 319; *Conway v. Supreme Council,* 137 Cal. 384, 70 Pac. 223; *Scott v. Jackson,* 89 Cal. 258, 26 Pac. 898.

Judge Cooley, in delivering the opinion in *Maxwell v. Bay City Bridge Co.,* 41 Mich. 453, 2· N. W. 639, said:

"The doctrine of estoppel rests upon a party having directly or indirectly made assertions, promises or assurances upon which another has acted under such circumstances that he would be seriously prejudiced if the assertions were suffered to be disproved or the promises or assurances to be withdrawn. But as the doctrine when applied operates to take away legal rights, it is no more than common justice to require that the facts which are supposed to call for its application shall be unquestionable, and the wrong which is to be prevented shall be undoubted."

*In re Hill's Estate,* 79 N. J. Eq. 521, 82 Atl. 338, states the rule as follows:

"It is a fundamental part of the doctrine of equitable estoppels that the estoppel extends only so far as may be necessary to protect from loss the party entitled to assert it. He may claim indemnification, but not profit."

This rule is supported by a long line of authorities therein cited. To the same effect are: *Gjerstadengen v. Hartzell,*

9 N. D. 268, 81 Am. St. Rep. 575, 83 N. W. 230; *Llano Granite Co. v. Hollinger* (Tex. Com. App.), 212 S. W. 151; *Green v. Stevenson* (Tenn. Ch. App.), 54 S. W. 1011.

C. S., sec. 6917 authorizes the sale of any interest in real estate which the judgment creditor may believe the judgment debtor possessed of. An execution creditor has the right to sell any pretended title or claim of the judgment debtor to any property whatsoever. If it turns out that he had no title, nothing passes by the sale; but the levy of an execution is not of itself a warranty, nor even an assertion, that the judgment debtor has even a valid title to the premises, if the judgment debtor has but a naked possession, or if he assert only a baseless claim to the property, the creditor has the right to subject it to his execution without thereby committing himself to the purchaser, in the least degree, as to the nature or validity of the title to be sold. The mere act of causing property to be sold, under his execution, by the judgment creditor, is, at most, but equivalent to a declaration that the judgment debtor has, or claims to have, some kind of ·title to or interest in the property, but is not an averment that, in point of fact he has any title whatsoever. Much less can it be held to be an averment that he has a *valid* title. The doctrine of estoppel *in pais* proceeds wholly on the theory that the party to be estopped has, by his declarations or conduct, misled another to his prejudice, so that it would be a fraud upon him to allow the true state of facts to be proved. Can it be said, with truth, that a judgment creditor, by the mere act of causing whatever title or pretense of title the judgment debtor had, to be sold under execution, has deluded the purchaser into the belief that the debtor has a *valid* title? The law will not presume the purchaser to be so deluded. (*Martin v. Zellerbach,* 38 Cal. 300.)

*Eastwood v. Standard Mines etc. Co.,* 11 Ida. 195, 81 Pac. 382, appears to be the leading authority, cited in support of an estoppel *in pais,* relied upon by respondent. Briefly, the facts in that case were that defendant mining company

held a lease from the owners of the fee of some patented mining claims and employed men to do some work on the same. While this work was being done, one of the owners of the claim was upon the premises and saw posted thereon, in a conspicuous place and manner, a statement that they belonged to the company that had only a lease and was working the same, and that such claims were not encumbered. It was forty-five miles from the county seat where the record title could be examined, and in winter season when a part of the distance could only be traveled on snowshoes. After the work was done the owners of the claims and the lessee company sought to defeat the laborers' liens by claiming that the working men should have examined the record and had they done so they would have known the company had only a lease. The court rightly held that all the defendants were estopped to set up such a defense. To contend that the facts of this case, or either of the cases from which excerpts are quoted, support the judgment in the case at bar, seems to me puerile and not to merit an extended consideration.

C. S., sec. 7974, provides that: "No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared otherwise than by operation of law or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing."

C. S., sec. 7976, subd. 5, makes a transfer, or lease for more than a year, of lands, invalid, except it be in writing.

These statutes, requiring that an estate in real property can only be lawfully created by an instrument in writing, are merely statutory declarations of the rule at common law that is based upon the statute of frauds, which has prevailed in every jurisdiction where the common law is followed as the foundation of its statutory law. The

principal reasons for its adoption were to render persons more secure in their landed estates and to prevent the owners from being deprived of such interest by reason of the uncertainty, and frequently the unreliability, of parol evidence, which may be and often is, where there is sufficient inducement offered, based upon conspiracies supported by perjured testimony.

Courts of equity found that the enforcement of this law, according to its strict letter, would sometimes result in an injustice and to avoid this the doctrine of estoppel *in pais* was resorted to and titles were thus created by operation of law. But courts of equity have always sparingly applied this doctrine in order to create titles. It has rarely, if ever, been done by a chancery court of high standing upon a bare preponderance of the testimony, or where the facts and circumstances giving rise to the alleged fraud or deceit upon which the estoppel is founded, were not established by evidence so clear and certain as to leave no well-founded doubt on the subject.

The decision in the instant case wholly disregards this salutary provision of this equitable principle and approves the judgment of the court below that the interest of Mrs. Bedal shall be taken from her and given to respondent, because she testified that she had been deceived and misled to her injury about the condition of the title when she purchased the property, although she admits she was in the courthouse where the records were before her for examination, and where she, with her attorney, had examined the record as to this title with reference to taxes. This court now naively says that it cannot disturb a judgment even of this kind, if there is any evidence to support the findings of the court below.

It follows, under this decision, that if an estoppel *in pais* is an issue in the case and is dependent upon any question of fact, and the court finds that the estoppel is established, although such finding be against the overwhelming weight of the evidence, where there is any evidence to support the findings, this court is bound to sustain the judg-

ment. Such a holding renders titles to real estate insecure and encourages unconscionable wrong.

The judgment of the court below should be vacated and respondent should be limited to the interest of Nellie Payne Johnson, which this court has said was a one-half interest in the property, or be required to accept a return of her money with interest.

Mr. Justice Budge authorizes me to say that he concurs in the foregoing dissenting opinion.