(No. 5422.  April 22, 1930.)

THE PEOPLE OF THE STATE OF IDAHO on the Relation of ROY S. WHITE, Doing Business as WHITE HARDWARE COMPANY, Suing for the Use and Benefit of Himself, Respondent, v. W. E. STORM, Defendant, and H. R. NEITZEL, F. H. NEITZEL, J. M. NEITZEL and A. J. FLACK, Appellants.

[287 Pac. 689.]

Wm. B. Davidson, for Appellants.

Karl Paine, for Respondent.

VARIAN, J.—On August 13, 1927, one W. E. Storm entered into a contract with the State of Idaho for the con-

struction of a portion of the Old Oregon Trail Highway in Payette county designated as Federal Aid Project No. 27. Pursuant to the terms of said contract and C. S., sec. 7341, the defendant H. R. Neitzel deposited with the Commissioner of Public Works a cashier's check for $4,200 in lieu of the surety bond required by said section. The work was completed and final settlement made with the contractor on or about December 13, 1927, and no suit on the contract or bond was brought within six months thereafter, or at all, by the state. Under date of August 29, 1927, defendant Storm assigned all moneys due or to become due under said contract to H. R. Neitzel, authorizing the state auditor to draw all warrants due thereunder payable to said Neitzel. On December 13, 1927, the said defendant H. R. Neitzel authorized the Commissioner of Public Works to pay to defendant Storm, without releasing Neitzel's liability under his cash bond, the retained percentage provided for in said contract and amounting to the sum of $726.07. Thereafter, pursuant to an agreement of even date therewith, on March 31, 1928, defendant H. R. Neitzel substituted a personal bond, with defendants H. R. Neitzel, F. H. Neitzel, J. M. Neitzel and A. J. Flack as sureties, in the penal sum of $4,200, in lieu of said cashier's check for $4,200, and reciting all the steps theretofore taken leading up to the giving of said cashier's check in lieu of the bond required by C. S., sec. 7341; and that—

"It is understood and agreed that this bond shall be substituted in lieu of the said cashier's check, and that this bond shall be held for any and all purposes for which said cashier's check has been or would be held and shall be for the protection against any contingency past or future arising out of said contract of August 13, 1927, or any failure of whatsoever nature on the part of said W. E. Storm to fully perform all of the covenants of said contract and the failure to pay all legal claims chargeable to or against the contract price to be paid by the State of Idaho to said W. E. Storm.

"Now therefore, the conditions of the above obligations is such that if the said W. E. Storm shall well and truly perform the terms and provisions of said contract and shall promptly make payments to all persons supplying him with labor and materials in the prosecution of the work provided in said contract that this obligation shall be void otherwise to remain in full force and effect, and it is specifically understood and agreed that this bond shall be liable in any event to all intent and purposes as though this bond had been originally given for the faithful performance of said contract."

This, then, is an action by one furnishing labor and materials for a public improvement, upon the bond required to be given by said C. S., sec. 7341. The contractor, defendant Storm, owed H. R. Neitzel $1,000 on a truck he had purchased, which he agreed to pay out of the profits of this contract. He also agreed to pay Neitzel ten per cent of the contract price as a premium for furnishing the bond.

The relator, Roy S. White, is engaged in the hardware business at New Plymouth, Idaho. R. G. Tuttle is a blacksmith at New Plymouth. Luce and Lewis operated the New Plymouth Garage, and the Van Petten Lumber Company had a lumber and coal yard at the same place. The claims of these creditors were all assigned to plaintiff. Storm's contract called for the furnishing of gravel in place by him, and he erected a plant to crush and screen the gravel necessary to fulfill his contract. This plant was at a gravel bed some three miles from the place the gravel was to be deposited, and gasoline trucks were employed to haul the gravel from the plant to the highway. The items embraced in the accounts are made up of lumber and supplies in constructing a platform and wooden "chute" to feed the rock-crusher, certain items of labor and repairs furnished for the plant itself, coal used in the operation of the plant, oils, gasoline, repairs including labor expended upon the trucks, and a few small items like tools, cotton gloves, etc. It is conceded that all of the repairs were not wholly consumed in the present operation, some being in

existence after the completion of the contract. Further mention will be made of the facts established by the evidence in dealing with specific questions raised by the appeal.

Defendant W. E. Storm defaulted, and findings and decree were entered in accordance with relator's complaint, the court further finding that defendants H. R. Neitzel and F. H. Neitzel were "estopped to deny that said labor, goods, wares, merchandise and materials, or any item thereof, were supplied in the prosecution of the work."

The first two paragraphs of C. S., sec. 7341, read:

"Any person or persons entering into a formal contract with the state, any county, city, town, school or irrigation district, or any *quasi* public corporation of the state, for the construction, alteration or repair of any public building, public work, or *quasi* public work, the contract price of which exceeds the sum of $200, shall be required before commencing such work, to execute the usual penal bond, in a sum equaling 60 per cent at least, of the contract price, to be approved by the officer, board or body authorized to make such contract, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract.

"Any person, company or corporation who has furnished labor or material used in the construction, alteration or repair of any public building, public work or *quasi* public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the state, county, city, town, school or irrigation district, or *quasi* public corporation, as the case may be, on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the state, county, city, town, school or irrigation district, or *quasi* public corporation, as the case may be."

The statute then provides that in case no suit is brought on the bond, within six months of the completion of the

contract, by the state or other owner, the person furnishing labor or materials for the prosecution of the work may bring an action in the name of the state on the contractor's bond, such action to be brought after completion and final settlement of the contract and within one year after final settlement.

The allegations of the complaint are to the effect that plaintiff sold and delivered to the contractor, "at the request of the defendants, goods, wares, merchandise and materials in the prosecution of said work," in the first cause of action; that his assignor "performed labor and sold and delivered to the defendant W. E. Storm, at the request of the defendants, goods, wares, merchandise and materials in the prosecution of said work," in the second and third causes of action; and that his assignor "sold and delivered to the defendant W. E. Storm, at the request of the defendants, goods, wares, merchandise and materials in the prosecution of said work," in the fourth cause of action.

The defendant sureties demurred to each cause of action upon the ground that no cause of action was stated as against them. Appellants contend that the court erred in overruling their demurrer because the bond sued upon is a statutory bond and the complaint is fatally defective in not alleging that the labor or material was "used in the construction, alteration, or repair" of said public work; that C. S., sec. 7341, makes this a prerequisite to an action on the bond. This objection is not well taken. The complaint refers in express terms to the obligation of the bond, which is that the contractor "shall promptly make payments to all persons supplying him" with labor and materials "in the prosecution of the work." Both expressions are found in the statute, and apparently were intended to cover the same ground.

"It is a correct rule in declaring upon a statute, to describe the cause of action, whatever it may be, in the words of the statute." (*Gebhart v. Adams,* 23 Ill. 345, 76 Am. Dec. 702.)

See, also, *Fair v. Home Gas & Electric Co.*, 13 Cal. App. 589, 110 Pac. 347; *McDonnell v. Murnan Shipbuilding Corp.*, 210 Ala. 611, 98 So. 887; 31 Cyc., p. 115.

In construing what is now C. S., sec. 7340, granting liens on public buildings, etc., this court held in *Chamberlain v. City of Lewiston*, 23 Ida. 154, 129 Pac. 1069, that the statute under consideration (C. S., sec. 7341) was a mere additional and cumulative remedy to that afforded by C. S., sec. 7340, and that both should be construed harmoniously, giving effect to both. In a later case, *Boise-Payette Lumber Co. v. Challis Independent School Dist. No. 1*, 46 Ida. 403, 268 Pac. 26, said sec. 7340 was expressly held to be unconstitutional and void. The only statutory protection now afforded laborers and materialmen for labor and materials furnished for the construction of public works, is that given by C. S., sec. 7341, which was taken almost bodily from the act of Congress of August 13, 1894, 28 Stat., p. 278, chap. 280, as amended February 24, 1905, 33 Stat., p. 811, chap. 778. (See 40 U. S. C. A., sec. 270, p. 92.) Reading the entire C. S., sec 7341, it is apparent that the complaint sufficiently states a cause of action thereunder.

■ The next objection is as to the character of the labor and materials furnished by plaintiff and his assignors, appellants contending that they are not covered by the bond. In this case, H. R. Neitzel, in the first instance, deposited a cashier's check, the equivalent of cash, in lieu of the undertaking required by the statute. The obligations and conditions affecting this fund are, then, to be determined by the provisions of the statute itself. Plaintiff's claim is made up of numerous small items, consisting of pipe, fittings, repairs to engine and equipment, and also including a few items like cotton gloves, telephone calls, express on engine parts, saw blades, shovels and other small tools, lanterns for use on the work, belts, belt lacing, etc. Plaintiff, under his contract, installed a gravel-crushing plant, operated by steam, at a distance of three or four miles from the work. It was necessary to pipe water a

short distance from Payette River in order to wash the dirt from the gravel to comply with the specifications of the contract. The principal items in plaintiff's claim are for the pipe and repairs to the crushing plant itself. The Tuttle account was for labor done upon the engine and trucks, repairs furnished, three or four tools, and an old log chain. The New Plymouth Garage claim is made up of items of labor and materials furnished in repairing the contractor's trucks, and for gasoline and oil furnished. The account of the Van Petten Lumber Company consisted of coal and lumber furnished for the crushing plant, the coal to operate the steam-engine and the lumber to construct hoppers for the crusher and a platform used in its operation. The plant is in a temporary location, and practically all of the lumber not actually consumed and worn out on this contract, would not be subject to use after the plant is moved. There is some evidence that the same crushing plant, operated at the same place, was used by Storm on another contract in the vicinity after the completion of the contract under consideration here. This assigned claim amounted originally in the aggregate to $798.60, all of which had been paid by defendant H. R. Neitzel except the balance of $42.65.

The federal statute, from which our own is taken, has been held to be highly remedial and should therefore be liberally construed to cover all persons who supply labor or material in a public work, to give all creditors a remedy on the bond of the contractor to be enforced within the time stated, etc., and that the strict letter of the act must "yield to its evident spirit and purpose, when this is necessary to give effect to the intent of Congress." (*Fleischmann Construction Co. v. United States, Use of Forsberg,* 270 U. S. 349, 46 Sup. Ct. 284, 289, 70 L. ed. 624; *Title Guaranty & Trust Co. v. Crane Co.,* 219 U. S. 24, 31 Sup. Ct. 140, 55 L. ed. 72; *United States v. American Surety Co.,* 200 U. S. 197, 26 Sup. Ct. 168, 50 L. ed. 437.)

The state authorities, under similar but not identical statutes, are divided, some states holding that such an act is designed to take the place of the mechanic's lien statutes

as applied to private structures, and to be construed to cover only such labor and materials as would be lienable if furnished for a private structure. (*Gary Hay & Grain Co. v. Carlson,* 79 Mont. 111, 255 Pac. 722; *Reiff v. Redfield School Board,* 126 Ark. 474, 191 S. W. 16.)

When C. S., sec. 7341, was enacted (Sess. Laws 1909, p. 165), what is now C. S., sec. 7340, giving a lien on public buildings, etc., was a part of our statute law. In construing that section, this court, in a case in which the constitutionality of the statute was not raised, applied the liberal construction rule (*Chamberlain v. City of Lewiston, supra*), which it is required to do under the provisions of the act of February 7, 1899, R. C., sec. 5150, in force although not carried into the present Compiled Statutes, 1919. (See *Armitage v. Bernheim,* 32 Ida. 594 (600), 187 Pac. 938.)

We think the better rule to be that recovery on the bond under our statute is not limited to labor and materials that are lienable under the mechanic's lien law in its application to private structures, but that all labor or materials that directly or indirectly contributed to the construction of the work are covered by the bond, even though such materials did not actually enter into the permanent structure. (*Eagle Oil Co. v. Altman,* 129 Okl. 98, 263 Pac. 666.) For a comprehensive review of all the authorities, see the case of *Franzen v. Southern Surety Co.,* 35 Wyo. 15, 46 A. L. R. 496, 246 Pac. 30. While the statutes in the different jurisdictions differ in language, their purpose and general import are to the same effect as the statute under consideration. The following cases support the views herein announced, holding that the bond covers various items not incorporated in the actual work: *Fidelity & Deposit Co. v. Mason,* 145 Va. 138, 133 S. E. 793 (salary for superintending the work); *Hicks v. Randich,* 106 W. Va. 109, 144 S. E. 887 (work in repairing contractor's trucks and value of repair parts placed in same, while hauling rock and material for the road base, said parts not being wholly destroyed by use during the progress of the work); *United States v. Aetna Indemnity Co.,* 40 Wash. 87, 82 Pac. 171 (constru-

ing the federal statute, furniture furnished contractors and required to be furnished under their contract); *Pacific Wood & Coal Co. v. Oswald*, 179 Cal. 712, 178 Pac. 854 (hay and feed for horses and mules used by the contractor in road work); *Eagle Oil Co. v. Altman, supra* (gasoline and motor oil consumed by trucks hauling road material); *Franzen v. Southern Surety Co., supra* (coal, oil, haulage, feed for horses); *Title Guaranty & Trust Co. v. Crane Co., supra* (cartage and towage to spot where work was carried on, patterns furnished contractor); *United States Fidelity & Guaranty Co. v. United States,* 189 Fed. 339, 111 C. C. A. 71 (labor in quarrying stone "was work done in the prosecution of the work," which included towage and dumping on breakwater).

The incidental repairs to machinery, pipe and fittings for washing the gravel, erections of a temporary nature necessary for the use of the crusher, incidental repairs to the motor-trucks used in conveying the gravel to the work from the crushing plant, although not wholly consumed in fulfilling the contract, we think come properly under the obligation imposed by C. S., sec. 7341. Clothing, such as gloves, etc., and tools not consumed or destroyed in the work, do not.

The trial court held that H. R. Neitzel and F. H. Neitzel by their acts were estopped from contesting the claims in suit here. Appellants contend that there was no sufficient pleading of an estoppel, and that the same does not lie. The complaint alleged that the items of the several accounts were furnished Storm "at the request of the defendants." F. H. Neitzel is the son of H. R. Neitzel, and went to work driving a truck on this job under circumstances that clearly indicate he was there representing his father. F. H. Neitzel, according to plaintiff's testimony, told plaintiff that Storm had the contract; that he and his father were backing Storm, were partners in the contract, and any materials supplied to Storm would be O. K.'d by them; that the account on this contract was to be kept in the name of Storm; authorized the purchase of items of account by Storm's

foremen, to be charged to that account. Storm's account for August and September was paid by check of the Bannock Motor Sales Company, owned by H. R. Neitzel. Later, F. H. Neitzel got a statement of the Storm account, and stated he would pay it by November 10, 1927. About the middle of September, 1927, after Mr. Tuttle, the blacksmith, had done some work, F. H. Neitzel told him that the Neitzels were with W. E. Storm and "they were backing the job," referring to the Storm contract, and asked if they might carry an account with him. About the time the work was started, F. H. Neitzel asked Mr. Luce of the New Plymouth Garage to permit them to open an account, saying they were partners of Storm. The August bill was paid by check of the Bannock Motor Sales Company. Certain personal items of Storm's on the October bill were not paid, and later were paid by Storm himself. H. R. Neitzel, on November 10th, had the gasoline tank on his car filled, and asked Luce to "charge this to our account," and stated that the account would be paid in a few days.

F. H. Neitzel obtained prices from Mr. Eder of the Van Petten Lumber Company on coal; they agreed upon the price, and the coal was delivered from time to time; it was charged to Storm; F. H. Neitzel told Eder that Storm owed him money and that was the reason he was on the job. F. H. Neitzel got the September bill for coal, and paid it on the 10th of October by check of the Bannock Motor Sales Company. The October bill was presented to F. H. Neitzel, and on November 10th H. R. Neitzel came in and asked Mr. Eder, "If I give you a check for $500, will that be satisfactory, and pay the balance later?" He then paid $500 by check of the Bannock Motor Sales Company.

In no instance, except as above noted, was any objection made by either of the Neitzels to the items of plaintiff's account or those of his assignors. During all the time the Neitzels were in touch with this job, and H. R. Neitzel's cashier's check was on deposit with the Department of Public Works, he was to receive ten per cent of the contract price for furnishing the bond; he paid the several

accounts for August and September, and promised to pay the balance including the items accruing after October 1, 1927. Clearly, under the facts of this case, H. R. and F. H. Neitzel are estopped from contesting any of the items of the several accounts sued on here.

We think that the allegations that the labor, or materials, were furnished "at the request of the defendants," are fully sustained by the evidence as to the two defendants last named, and, in the absence of attack by special demurrer, are sufficient to admit evidence of an estoppel. (*Quirk v. Bedal,* 42 Ida. 567, 248 Pac. 447; *Powell-Sanders Co. v. Carssow,* 28 Ida. 201, 152 Pac. 1067.)

The present bond was given long after the completion of the contract, at a time when the claims involved in this suit were entitled to be paid in full out of the fund evidenced by H. R. Neitzel's cashier's check, by reason of the estoppel against H. R. Neitzel. By the terms of the bond, the sureties agreed that it was substituted for the cashier's check, and that the bond was "held for any and all purposes for which said cashier's check *has been* or would be held." All of the sureties are therefore bound for the full amount of the several claims by the stipulations contained in the bond.

Judgment affirmed. Costs to respondent.

Givens, C. J., and Budge, Lee and McNaughton, JJ., concur.