528 P.2d 201

**CITY OF WEIPPE, formerly the Village of Weippe, a Municipal corporation, for the Use and Benefit of LES SCHWAB TIRE CENTERS OF IDAHO, INC., an Idaho corporation, Plaintiff-Appellant,**

v.

**J. R. YARNO, d/b/a Yarno and Associates, et al., Defendants-Respondents.**

No. 11391.

Supreme Court of Idaho.

Nov. 15, 1974.

Robert S. Williams, Moscow, for plaintiff-appellant.

Michael E. McNichols, Orofino, for defendants-respondents.

DONALDSON, Justice.

This is an action brought by use-plaintiff-appellant Les Schwab Tire Centers of Idaho, Inc. against defendant-respondent United States Fidelity and Guaranty Company, on a public works payment bond executed in behalf of defendant-respondent J. R. Yarno, d/b/a Yarno and Associates, in connection with a contract to have been performed for plaintiff-appellant City of Weippe, Idaho.

In June, 1967, J. R. Yarno, d/b/a Yarno and Associates, hereafter "Yarno," entered into a public works contract with the City of Weippe. Subsequent thereto, respondent United States Fidelity and Guaranty Company, hereafter "U.S.F. & G," issued and furnished a labor and material bond in the penal sum of $190,174.21.

In September and October, 1968, appellant Les Schwab Tire Centers of Idaho, Inc., hereafter "Les Schwab," furnished certain tires, anti-freeze and labor valued in the amount of $1,494.57 at the insistence and request of respondent Yarno.

During the first or second week of November, 1968, Yarno moved off the job site and did not, personally, by agent or otherwise, deliver any materials or personal property to the operation at Weippe, or render any personal services in connection with the public works contract. The City of Weippe, by letter dated July 1, 1969, declared that Yarno was in default in the performance of said public works contract and therefore terminated the contractual relationship.

Appellant Les Schwab instituted action [1] for payment February 11, 1970 for the above listed materials and labor. Yarno allowed judgment to be entered against him April 8, 1970 in the amount of $1,522.-67 (materials plus costs). Respondent, U. S.F. & G. answered, counterclaimed and filed motion for summary judgment. Subsequent to hearing, briefs were submitted by both parties and the trial court granted respondent's motion. Judgment was entered and appeal was taken therefrom to this Court as case number 10828, Weippe v. Yarno, 94 Idaho 257, 486 P.2d 268 (1971), wherein the trial court's granting of summary judgment was reversed. Trial on the merits was held without jury October 24, 1972 and the district court dismissed appellant's complaint with prejudice and awarded respondent attorney's fees and costs in the amount of $810.00. Error is assigned to that finding.

Two principle issues of controversy are presented in this case: Whether goods and labor furnished by use-plaintiff are "materials" within the definition of that term under the Idaho Public Contracts Bond Act or the payment bond in question? Whether the applicable period of limitations had run thereby barring the action?

The trial court found that the personal services furnished and the personal property sold to Yarno by use plaintiff were not "labor and materials" within the provisions of the Idaho Public Contracts Bond Act. The trial court rationale was that the goods and services were not, in the reasonable contemplation of all parties, to be consumed; and were not consumed in the completion of the project. We disagree.

1. Action was instituted pursuant to provisions of the Idaho Public Contracts Bond Act, I.C. § 54–1901 et seq.

The labor and material bond contains the following definition:

"A. A claimant is defined as one having a direct contract with the Principal [Yarno] or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract."

I.C. § 54–1926 states in applicable part that before certain public works contracts are awarded, bonds shall become binding upon the award:

"(1) A performance bond in any amount to be fixed by the contracting body, but in no event less than 50 per cent of the contract amount conditioned upon the faithful performance of the contract in accordance with the plans, specifications and conditions thereof. *Said bond shall be solely for the protection of the public body awarding the contract.*

(2) A payment bond in an amount to be fixed by the contracting body but in no event less than 50 per cent of the contract amount, *solely for the protection of persons supplying labor or materials to the contractor or his subcontractors in the prosecution of the work provided for in such contract.*" (emphasis added)

I.C. § 54–1927 states in applicable part that every claimant who has furnished labor or material in the prosecution of a public works contract, and who has not been paid, can sue on the payment bond. The statutory period for bringing such action is one year from the date the last labor or materials were supplied, or in no event greater than one year from the date

final payment under the subcontract was due.

The record clearly shows that the defendant was supplied with two new tires, a retread, a section repair for a third tire and four gallons of anti-freeze. The record further shows that such supply was essential to keep a Trojan front end loader in operation. It is undisputed that the tires furnished, under the operating conditions at bar, had a life expectancy of approximately three months. Testimony shows that the loader was used from eight to ten hours a day, five days a week on the Weippe project, for seven to eight weeks after their installation. The loader had been used over sharp four inch rocks and when the equipment left the project, notches and big chunks of rubber had been cut out and spun off the tread.

The supplies in question, coupled with their testified use, clearly qualified as materials under the act. Analysis of I.C. §§ 54–1926 and 54–1927, and 40 U.S.C. § 270a (the Federal Statute—Miller Act) indicates both are substantially identical.

In People v. Storm, 49 Idaho 246, 254, 287 P. 689 (1930), this Court stated:

"The Federal statute, from which our own is taken, has been held to be highly remedial, and should, therefore, be liberally construed to cover all persons who supply labor or material in a public work, to give all creditors a remedy on the bond of the contractor to be enforced within the time stated, etc., and that the strict letter of the act must 'yield to its evident spirit and purpose, when this is necessary to give effect to the intent of Congress.' " [2]

A statute which is adopted from another jurisdiction, including federal statutes adopted by a state, will be presumed to be adopted with the prior construction placed upon it by the courts of the other

2. *See also* Minidoka County v. Krieger, 88 Idaho 395, 399 P.2d 962 (1965); Rogers v. County of Nez Perce, 83 Idaho 467, 364 P.2d 1049 (1961); State v. H. & K. Construction Co., 75 Idaho 492, 274 P.2d 1002 (1954).

jurisdictions.[3] As such, we find the following cases persuasive.

Montgomery v. Unity Electric Co., 155 F.Supp. 179 (D.C.P.R.1957) was an action under the Miller Act for materials sold to a subcontractor. The court held:

"With respect to * * * inability to show actual incorporation or use in the prosecution of the work, the rule is that such incorporation or use in the work is not required for recovery on the contractor's bond; all that has to be shown is that the materials were 'furnished' in the prosecution of the work." 155 F.Supp. 180.

United States v. National Surety Corp., 179 F.Supp. 598 (E.D.Pa.1959), another Miller Act case, held:

"While the use plaintiff satisfactorily established that all of the items for which a claim is made were actually incorporated in Nike Sites 78 and 97, I do not feel that this is necessary in order for it to recover under the Miller Act * * *. The better view is to interpret the Miller Act so that it protects anyone who, in good faith, furnishes material necessary to the prosecution of a public work expecting it to be actually used." 179 F.Supp. 604.

The court's rejection of the substantial consumption test argued by the respondent was further rejected in United States v. Fire Association of Philadelphia, 260 F.2d 541 (2d Cir. 1958).[4]

"Recognizing that substantial consumption is, as discussed above, a significant factor in the very definition of materials furnished in the prosecution of the bonded work, we see no further merit in appellant's assertion that the surety's liability must be predicated on a showing that the materials supplied were in fact substantially consumed by the work. Appellant's position finds no support in the authorities apart from a single dictum by a district judge." 260 F. 2d 544.

The materials supplied in the case were tires and the court further stated:

"Under this standard the tires here involved are clearly materials, not capital equipment. At the time of their delivery, the facts unequivocally show that both the use plaintiff and the construction company reasonably expected them to have been substantially used up in the work under the contract. Although many of these items may not in fact have been consumed prior to the unexpected work stoppage, there is not the slightest taint in this case of an attempt by the contractor, within the constructive knowledge of its suppliers, to build up its permanent capital investment at the surety's expense." 260 F.2d at 544.

This Court is in agreement with the appellant that a showing of substantial consumption has been made. However, under the above rationale, no such showing is necessary, for the facts at bar clearly establish that the use plaintiff and the construction company reasonably expected at the time of sale that the supplies and labor would be substantially consumed on the project in question. The labor furnished and personal property sold clearly fall within the definition of materials, and as such are covered by the provisions of the Act. This finding is reinforced by the earlier showing that neither the bond in question nor I.C. § 54–1927 requires a showing of substantial consumption.

The second issue this Court must face is whether the applicable period of limitations had run thereby barring the action.

The payment bond provides in pertinent part the following:

"1. No suit or action shall be commenced hereunder by any claimant,

3. Doggett v. Electronics Corp. of Am. Combust. Con. Div., 93 Idaho 26, 454 P.2d 63 (1969); Lawrence Warehouse Co. v. Rudio Lumber Co., 89 Idaho 389, 405 P.2d 634 (1965); Services, Inc. v. Neill, 73 Idaho 330, 252 P.2d 190 (1953).

4. See also Continental Casualty Co. v. Allsop Lumber Co., 336 F.2d 445 (8th Cir. 1964); United States v. Woods Construction Co., 224 F.Supp. 406 (N.D.Okl.1963).

2. After the expiration of one (1) year following the date on which Principal ceased work on said contract, it being understood, however, if any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law."

I.C. § 54–1927 provides:

"that no such suit shall be commenced after the expiration of one (1) year from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which such suit is brought * * *."

In City of Weippe v. Yarno, *supra,* this Court resolved the above question of whether the period of limitation runs from the date of supply or the date the principal ceases work on the contract. We therein held that the contractual provisions of the bond were to be given effect rather than the statute. In so holding, we found nothing improper in allowing two parties to agree to lengthen the statutory period. Based upon ·a letter from the City of Weippe holding Yarno in default of his contract, we accepted as a fact on summary judgment the cease work date of July 1, 1969, and reversed the district court. That determination, however, was premised upon the rule that facts should be liberally .construed in favor of the party against whom summary judgment is sought and all doubts should be resolved against that moving party.[5]

■ A reading of the full record now before this Court for the first time indicates that the applicable period of limitations had run thereby barring the action. Suit was commenced February 11, 1970. The record clearly shows that Yarno "in fact" ceased work the first or second week in November, 1968. The trial court's finding that construction "in fact" ceased November 6, 1968, but "in law" ceased July 1, 1969, was based upon dicta contained in our prior decision. This Court is not bound by such dicta,[6] and based upon the present record, finds that the principal ceased work more than one year prior to commencement of the action.

■ The trial court reached the same result but on a theory other than that adopted by this Court. Where the order of the lower court is correct, it will be affirmed upon the correct theory.[7]

Judgment affirmed. Costs and attorney's fees to respondent pursuant to I.C. § 54–1929.[8]

SHEPARD, C. J., and McQUADE, McFADDEN and BAKES, JJ., concur.

5. Schaefer v. Elswood Trailer Sales, 95 Idaho 654, 516 P.2d 1168 (1973) ; Straley v. Idaho Nuclear Corp., 94 Idaho 917, 500 P.2d 218 (1972) ; Crane v. Banner, 93 Idaho 69, 455 P.2d 313 (1969) ; Tri-State National Bank v. Western Gateway Storage Co., 92 Idaho 543, 447 P.2d 409 (1968).

6. Peterson v. State, 87 ʿIdaho 361, 393 P.2d 585 (1964) ; Long v. State Insurance Fund, 60 Idaho 257, 90 P.2d 973 (1939) ; Bashore v. Adolf, 41 Idaho 84, 238 P. 534 (1925).

7. Rinehart v. Farm Bureau Mutual Insurance Company of Idaho, Inc., 96 Idaho 115, 524 P.2d 1343 (1974) ; Lemmon v. Hardy, 95 Idaho 778, 519 P.2d 1168 (1974) ; Church v. Roemer, 94 Idaho 782, 498 P.2d 1255 (1972) ; Industrial Indemnity Co. v. Columbia Basin Steel & Iron, Inc., 93 Idaho 719, 471 P.2d 574 (1970).

8. "54–1929. Attorney's fees allowed.—In any action brought upon either of the bonds provided herein, or against the public body failing to obtain the delivery of the payment bond, the prevailing party, upon each separate cause of action, shall recover a reasonable attorney's fee to be taxed as costs."