# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34898-2008

| | | |
|---|---|---|
| EVCO SOUND & ELECTRONICS, INC., | ) | |
| | ) | Boise, November 2009 Term |
| Plaintiff-Respondent, | ) | |
| | ) | 2009 Opinion No. 146 |
| v. | ) | |
| | ) | Filed: November 27, 2009 |
| SEABOARD SURETY COMPANY, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| Defendant-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CEDAR STREET ELECTRIC AND CONTROL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. The Hon. John T. Mitchell, District Judge.

The judgment of the district court is affirmed.

Racine, Olson, Nye, Budge & Bailey, Chtd, Pocatello, for appellant. Frederick J. Hahn, III, argued.

Terry E. Miller, Kennewick, Washington, and Malcolm Dymkoski, Coeur d'Alene, for respondent. Terry E. Miller argued.

---

EISMANN, Chief Justice.

This is an appeal from a judgment holding a surety liable for sums owed to a sub-subcontractor under a payment bond issued pursuant to Idaho Code § 54-1927. The surety contends that there was insufficient evidence to find that the subcontractor and sub-subcontractor had entered into an express contract and that the district court erred in holding that the sub-subcontractor gave timely written notice of its claim under the bond and timely filed this lawsuit.

We affirm the judgment of the district court and award the sub-subcontractor attorney fees on appeal.

## I. FACTS AND PROCEDURAL HISTORY

Ormund Builders, Inc., (General Contractor) is a large building contractor specializing in the construction of commercial, public, and industrial buildings. It desired to submit a bid to construct a public high school in Rathdrum, Idaho.

Cedar Street Electric and Control, Inc., (Subcontractor) is an electrical contractor principally located in Sandpoint, Idaho. It desired to submit a bid to General Contractor to provide all of the electrical work on the construction project.

Evco Sound and Electronics, Inc., (Sub-subcontractor) is a low-voltage electrical supply and installation company principally located in Spokane, Washington. On March 3, 2004, it submitted a bid to Subcontractor offering to perform the low-voltage electrical work on the project by supplying the labor and materials for the fire alarm, intercom, telephone, and television media for the sum of $165,850. The bid identified the work to be done as "Section 16721 Fire Alarm," "Section 16760 Intercom CLK Telephone," "Section 16771 Sound Systems," and "Section 16780 TV Distribution." The sections referenced were portions of the "General Conditions of the Contract for Construction, Division-16 Basic Electrical Materials and Methods," for the construction project, which described in detail the electrical work to be done on the project.

At the request of Subcontractor, Sub-subcontractor submitted a revised bid dated March 10, 2004, in which it included the Idaho use tax of 6%. Subcontractor used Sub-subcontractor's bid in preparing and submitting a bid to General Contractor.

The bid opening was on March 10, 2004. General Contractor was the low bidder on the project, but its bid exceeded the school district's budget for the construction project. In order to reduce the amount of its bid, General Contractor met with its architect and several subcontractors who had submitted bids, including Subcontractor, to identify changes in the design, the work to be done, and/or the materials or equipment to be used that it could suggest to the school district in order to reduce the cost of the project. This process was called "value engineering." During that process, Subcontractor consulted with Sub-subcontractor as to what parts of the low-voltage work could be deleted or modified and the cost reduction that would result from those changes.

2

Ultimately, General Contractor entered into a contract with the school district to construct the high school. Seaboard Surety Company (Surety) is licensed to issue surety bonds in Idaho, and it issued a payment bond pursuant to Idaho Code § 54-1927 guaranteeing payment to those who furnished labor or material or supplied equipment in constructing the school. On April 7, 2004, General Contractor entered into a subcontract with Subcontractor to perform the electrical work on the project for the sum of $565,500.

On June 14, 2004, Subcontractor sent Sub-subcontractor a fax marked urgent in which Subcontractor stated: "Please accept this fax as our intent to enter into a contract with [Sub-subcontractor] for this project (Contract to follow). We need back cans for wall mount clock + speakers – ASAP." In response to this fax, Sub-subcontractor went to work on the construction project, and it completed all of the work it had agreed to do, with the changes later agreed upon by the parties.

On June 22, 2004, Subcontractor sent Sub-subcontractor a fax stating as follows:

> Kevin, in order for us to be on the same page the following valued eng[1] items have been accepted. Could you please provide me with your amounts again.
>
> | | |
> |---|---|
> | Delete sound system from gym | (32,000) |
> | Delete media retrieval system | ( 1,400) |
> | Delete system input jacks | ( 1,530) |
> | Change system wire to riser from plenum | ( ) |
>
> Also pls review sub-contract.

Sub-subcontractor responded in a writing dated June 29, 2004, which showed the revised contract price based upon the changes agreed to by the school district. The writing restated Sub-subcontractor's bid as it had been set out in the March 3, 2004, writing, with the following deductions:

| | |
|---|---|
| Delete Sound system except speaker wire and speaker back boxes | $32,000.00 |
| Delete Media Retrieval system | $ 1,400.00 |
| Delete TV input plates | $ 1,530.00 |
| Convert wire to non Plenum TV and Intercom | $ 1,490.00 |
| Total deductions | $36,420.00 |
| Revised contract price | $129,430.00 |

---

[1] The abbreviation "valued eng" referred to "value engineering."

3

The writing dated June 29, 2004, also included an additional sum for the Idaho use tax, but the Sub-subcontractor typed on the bottom of the document that it could be deleted if Subcontractor wanted to handle it. The parties later agreed that the Subcontractor would pay the use tax.

On June 23, 2004, Subcontractor had sent Sub-subcontractor a proposed sub-subcontract agreement, but that agreement did not define the scope of work to be done by Sub-subcontractor. Subcontractor had prepared the agreement by copying provisions from its subcontract agreement with General Contractor. When doing so, Subcontractor copied verbatim the scope of work it was to perform under its subcontract agreement with General Contractor, which was all of the electrical work on the project, not just the low-voltage electrical work. The proposed subcontract also left blank the contract price. Neither Subcontractor nor Sub-subcontractor signed the proposed sub-subcontract agreement.

The school building was substantially completed on January 28, 2005. Subcontractor was paid all but about $3,000 to $3,500 of its $565,500 subcontract price, but it did not make any payments to Sub-subcontractor. However, General Contractor made two payments to Sub-subcontractor totaling $53,325, with the last payment being made on March 30, 2005.

The last work performed by Sub-subcontractor in connection with the construction project was providing training to the school district on April 15, 2005; installing part of the television system on April 26, 2005; and preparing as-built drawings which it completed on June 15, 2005. On June 13, 2005, it gave notice to General Contractor that it had not been paid the full amount owing on its sub-subcontract with Subcontractor. On September 29, 2005, Sub-subcontractor served notice of nonpayment on Surety, and on March 10, 2006, it filed this lawsuit against Subcontractor and Surety.

Subcontractor did not appear in the action, and default was entered against it. It appeared specially seeking to set aside that default, contending that it had not been properly served. The district court denied the motion.

Sub-subcontractor's claim against Surety was tried to the district court sitting without a jury. Surety contended that it had no liability on the payment bond because there was no express contract between Subcontractor and Sub-subcontractor, Sub-subcontractor did not timely give written notice or file this lawsuit as required by Idaho Code § 54-1927, and Sub-subcontractor's claim was barred by the statute of frauds in Idaho Code § 28-2-201. The district court found in

4

favor of Sub-subcontractor and entered judgment in its favor against Surety and Subcontractor in the sum of $76,105, plus interest. Surety timely appealed.

## II.  ISSUES ON APPEAL

1.  Did the district court err in holding that Sub-subcontractor had given timely notice of its claim under Idaho Code § 54-1927?

2.   Did the district court err in holding that Sub-subcontractor's claim was not barred by the statute of frauds in Idaho Code § 28-2-201?

3.  Did the district court err in finding that Subcontractor and Sub-subcontractor had entered into a sub-subcontract for $129,430?

4.  Is either party entitled to an award of attorney fees on appeal?

## III.  ANALYSIS

### A.  Did the District Court Err in Holding that Sub-subcontractor Had Given Timely Notice of Its Claim under Idaho Code § 54-1927?

Sub-subcontractor's claim against Surety is based upon the payment bond issued by Surety pursuant to Idaho Code § 54-1927.  Because Sub-subcontractor did not have a contractual relationship with General Contractor, Sub-subcontractor would not have a right of action on the payment bond unless it gave written notice to General Contractor "within ninety (90) days from the date on which such claimant performed the last of the labor or furnished or supplied the last of the material for which such claim is made." *Id*.  Sub-subcontractor also had to file this lawsuit within one year "from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material or equipment for which such suit is brought." *Id*.  Surety contends that Sub-subcontractor was untimely in both giving the written notice and in filing this lawsuit.

The district court found that Sub-subcontractor had provided training sessions for the school district on April 15, 2005; had installed part of the television system on April 26, 2005; and had completed its as-built drawings on June 15, 2005.  The court also found that all of this work was required by the scope of work that Sub-subcontractor had agreed to perform.  Because Sub-subcontractor served written notice upon General Contractor on June 13, 2005, and filed this

5

lawsuit on March 10, 2006, the court found that the giving of the notice and the filing of this lawsuit were timely under Idaho Code § 54-1927.

Surety contends that as a matter of law such work is not sufficient to extend the time for giving notice under the statute. It argues that Section 54-1927 should be construed in the same manner as the statutes governing liens of mechanics and materialmen, I.C. §§ 45-501 through 45-525. According to Surety, "Idaho Courts may draw from the lien statute in construing the Bond Act. Certainly, it is well settled law in Idaho that substantial completion is a construction milestone, which properly commences the time deadline to record a mechanics lien against a private works project." (Citation omitted.)

In making that argument, Surety quotes from *Mitchell v. Flandro*, 95 Idaho 228, 231, 506 P.2d 455, 458 (1972), which held, "It is established that 'trivial' work done or materials furnished after the contract has been substantially completed will not extend the time in which a lien claim can be filed under I.C. 45-507." In *Mitchell*, the contractor's testimony also showed that "the issuance of the certificate [of substantial completion] also marked the effective completion of construction under the contract." 95 Idaho at 230-31, 506 P.2d at 457-58.[2]

Even under the lien statutes, however, substantial completion is not necessarily the date upon which the time period for filing the lien commences. In *Pierson v. Sewell*, 97 Idaho 38, 539 P.2d 590 (1975), the landowners challenged a mechanic's lien on the ground that it had been untimely filed. The statute in effect at that time required the lien to be filed within sixty days after completion of the labor, and the landowners contended it had been filed more than sixty days after substantial completion of the construction project. This Court re-affirmed the holding in *Mitchell v. Flandro* that "the sixty-day period for the filing of liens cannot be extended or revived by the furnishing of trivial labor or materials once the contract has been completed." *Id.* at 42, 539 P.2d at 594. This Court then stated that when labor is done or materials are furnished after substantial completion of the construction project, "the lien claimant must show that the materials or labor were actually used in constructing or repairing the structure, and that they were

---

[2] There is a policy reason why the time for filing a lien should be shorter than the time for filing a claim under a payment bond. Extending the time for filing a lien creates uncertainty regarding title to real property. As this Court stated in *Gem State Lumber Co. v. Witty*, 37 Idaho 489, 501, 217 P. 1027, 1030 (1923), if trivial work could extend the time for filing a lien, "in every case where a right to file a lien has ever existed, the title to the property may, for an indefinite period, remain in an unsettled and not ascertainable condition, with reference to the character and extent of the mechanic's liens which may be claimed against such property." Title to real property is not impacted under the bond statute.

6

reasonably necessary to complete construction according to the terms of the contract." *Id*. This Court held that the time for filing the lien was extended beyond the date on which the construction was substantially completed because of work that consisted of spending "a 'good half day' installing registers, changing two air ducts and replacing the thermostat." *Id*. This Court held that such work was not trivial where it "was considered the final work under the contract and is customarily done in the trade." *Id*.

This Court has rejected the contention that liability for labor and materials under a payment bond should be co-extensive with the type of labor or materials that are lienable under the mechanics' and materialmen's lien statutes. When addressing liability under Idaho's prior statute requiring payment bonds for public works projects, this Court stated:

> We think the better rule to be that recovery on the bond under our statute is not limited to labor and materials that are lienable under the mechanic's lien law in its application to private structures, but that all labor or materials that directly or indirectly contributed to the construction of the work are covered by the bond, even though such materials did not actually enter into the permanent structure.

*State ex rel. White v. Storm*, 49 Idaho 246, 255, 287 P. 689, 692 (1930). Under Idaho Code § 54-1927, we have likewise held that a surety can be held liable under a payment bond for labor and materials that are not lienable. In *City of Weippe ex rel. Les Schwab Tire Centers of Idaho, Inc. v. Yarno*, 96 Idaho 319, 528 P.2d 201 (1974), we held that the supplier of tires and anti-freeze and of labor to repair a tire for a loader used in a construction project could recover under the payment bond, while in *Great Plains Equipment, Inc. v. Northwest Pipeline Corp.*, 132 Idaho 754, 763-64, 979 P.2d 627, 636-37 (1999), we held that the supplier of fuel and lubrication products for equipment used in a construction project was not entitled to a mechanic's lien. We have also held that labor and materials used in the construction project but not incorporated into the building, structure, or improvement are lienable only if they are consumed or destroyed during the construction, *id*. at 760-63, 979 P.2d at 633-36, but that same restriction does not apply in order to recover on a payment bond, *City of Weippe*, 96 Idaho at 322, 528 P.2d at 204.

Idaho Code § 54-1927 was taken from the Miller Act, 49 Stat. 793, 794 (1935) (now codified as amended at 40 U.S.C. §§ 3131 & 3133), and will therefore be presumed to have been adopted with the prior construction placed upon it by the federal courts. *City of Weippe*, 96 Idaho at 321-22, 528 P.2d at 203-04.

7

Prior to the adoption of Idaho Code § 54-1927 in 1965,[3] the United States Court of Appeals for the Ninth Circuit construed the Miller Act in *United States ex rel. Austin v. Western Electric Co.*, 337 F.2d 568 (9th Cir. 1964). In that case, the surety of a sub-subcontractor sued the general contractor and its surety seeking to recover the balance owing for labor the sub-subcontractor had performed under its sub-subcontract. The general contractor and its surety moved for summary judgment on the ground that the lawsuit was untimely because it had been filed more than one year after the sub-subcontractor had substantially completed its work. The sub-subcontractor's surety defended the summary judgment by producing a "punch list," containing some sixty items, that the subcontractor had sent to the sub-subcontractor as work to be completed under the terms of the sub-subcontract. The sub-subcontractor's surety contended that those punch-list items were completed within one year of the filing of the complaint. The trial court granted summary judgment dismissing the complaint on the ground that the complaint had not been filed within one year of the date that the sub-subcontractor had substantially completed its work.

The appellate court held that the trial court had misinterpreted the Miller Act by holding that the time began to run when the claimant had substantially completed its work. The appellate court stated:

> We do not find the phrases 'substantially performed' or 'substantially completed' used in any of the decided cases. A more accurate statement of the test to be applied is whether the work was performed and the material supplied as a 'part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project'.

337 F.2d at 572-73 (quoting *United States ex rel. Gen. Elec. Co. v. Gunnar I. Johnson & Son, Inc.*, 310 F.2d 899, 903 (8th Cir.1962)). The general contractor and its surety argued on appeal that they were still entitled to summary judgment because "the punch list items were in the nature of corrections of minor defects, not necessary to 'substantial completion' of the plaintiff's contract." *Id*. at 573. The appellate court rejected that argument, stating, "Many of the items in the punch list, however, appear to be work required for the 'completion of the project.'" *Id*. (footnote omitted). Because the evidence in the record did not show whether the punch-list work

---

[3] Ch. 28, § 3, 1965 Idaho Sess. Laws 43, 45-46.

done was part of the original contract or corrections and repairs done after completion of the contract, the appellate court reversed the judgment.

In this case, Sub-subcontractor was required to give written notice to General Contractor "within ninety (90) days from the date on which such claimant performed the last of the labor or furnished or supplied the last of the material for which such claim is made," and it was required to file this lawsuit within one year "from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material or equipment for which such suit is brought." I.C. § 54-1927. We find the reasoning of the *Western Electric* case persuasive in interpreting when those time periods began to run under Idaho Code § 54-1927. The test is whether performing the labor or furnishing or supplying the material or equipment was done as part of the original contract or to correct defects or make repairs following an inspection.

The district court found that Sub-subcontractor provided the training sessions on April 15, 2005; installed part of the television system on April 26, 2005; and completed the as-built drawings on June 15, 2005, as part of the original scope of work required under the sub-subcontract.[4] Surety argues, "The many Miller Act decisions addressing this issue conclude that punch-list or warranty work do not extend those dates . . . ." Surety has not pointed to any evidence that any of this work was warranty work, or that it was remedial or corrective work. Sub-subcontractor gave written notice to General Contractor on June 13, 2005, and filed this lawsuit on March 10, 2006, within ninety days and one year respectively as required by Idaho Code § 54-1927. Therefore, the court did not err in holding that Sub-subcontractor had timely given the required written notice and filed this lawsuit.

**B. Did the District Court Err in Holding that Sub-subcontractor's Claim Was Not Barred by the Statute of Frauds in Idaho Code § 28-2-201?**

Surety raised as a defense that Sub-subcontractor's claim was barred by the statute of frauds in Idaho Code § 28-2-201(1). That statute provides that a contract for the sale of goods with a price of $500 or more "is not enforceable by way of action . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and

---

[4] There is no contention that Sub-subcontractor unreasonably delayed performing any of this work.

signed by the party against whom enforcement is sought." The district court held that Sub-subcontractor's claim was not barred for three reasons.

First, the district court relied upon Idaho Code § 28-2-201(3)(c), which provides that a contract that does not satisfy the statute of frauds in Section 28-2-201(1) is enforceable "with respect to goods . . . which have been received and accepted." The district court found that "[n]either [Subcontractor] nor [General Contractor] objected in any way to the work and materials [Sub-subcontractor] installed on the project" and therefore "the materials and equipment were accepted and the contract was taken out of the Statute of Frauds."

Second, the district court relied upon Idaho Code § 28-2-201(2), which provides that between merchants, the statute of frauds is satisfied if "within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents [and] written notice of objection to its contents is [not] given within ten (10) days after it is received." The district court held that Subcontractor and Sub-subcontractor were merchants. It further held that after Subcontractor received the March 10, 2004, revised bid and the June 29, 2004, revision, "not only were they not objected to, but [Subcontractor] *told* [Sub-subcontractor] to start performing the work discussed." (Emphasis in original.)

Finally, the district court relied upon subsections (1) and (3) of Idaho Code § 28-2-204 which provide, "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract," and "Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." The district court held that the facts of this case "provide the 'reasonably certain basis' for establishing [Sub-subcontractor's] claim against both [Subcontractor] and the bond by [Surety]."

Surety contends that the Idaho Code § 28-2-201(2) does not apply to it because it was not a party to the alleged contract. It argues:

> The exception does not apply as against a third party - Seaboard.
>     In this matter, at least as to its case against Seaboard, EVCO is attempting to assert claimed contract entitlement against Seaboard's bond. The exception at 28-2-201(2) appears to only relate to Cedar Street, a party to the proposed transaction. Perhaps it could be argued the exception applies as to claims against Cedar Street, but that issue is irrelevant.

Surety also contends that Idaho Code § 28-2-201(3)(c) does not apply because, "As with the previous exception, such may be valid as against a statute of frauds defense asserted by Cedar Street, but not Seaboard."

Surety's arguments misapprehend the issue. To recover under the bond, Sub-subcontractor must prove that it was a "claimant having a direct contractual relationship with a subcontractor of the contractor furnishing such payment bond." I.C. § 54-1927. There was no dispute that General Contractor furnished the bond and that Subcontractor had entered into a subcontract agreement with General Contractor. The issue in dispute was whether Sub-subcontractor had "a direct contractual relationship" with Subcontractor. The statute of frauds would only be relevant as a defense to show that Sub-subcontractor did not have a direct contractual relationship with Subcontractor. Any applicable exception to the statute of frauds would depend upon the conduct of Sub-subcontractor and Subcontractor. There is no requirement that Sub-subcontractor have any contractual relationship with Surety. Thus, Surety's argument that the exceptions do not apply to it as a third party is unavailing.

We have only addressed the arguments made by Surety regarding its statute of frauds defense. We express no opinion on the trial court's reasoning, nor do we express any opinion as to whether this transaction was a contract for the sale of goods, which is necessary for Idaho Code § 28-2-201(1) to apply. *See Fox v. Mountain West Electric, Inc.*, 137 Idaho 703, 709-10, 52 P.3d 848, 854-55 (2002).[5]

---

[5] The work Sub-subcontractor performed included:

> Furnish and install a complete, constantly supervised, battery backed Fire Alarm system with audible signals and visual signals for evacuation and provision for connection to a Central Reporting Service.

> [P]rovide a complete and properly operating communications system including telephone service, zoned intercom for voice-communications, amplification and distribution of voice paging, time tone distribution with visual alerting, distribution of audio programming, a synchronized master clock system and four channels of media control as specified and as shown on the drawings.

> [A]ll labor, materials, tools, transportation services, supervision, coordination, etc., necessary to complete the installation of the [gymnasium] sound systems, as described in these specifications and illustrated on the associated drawings. The systems include the following major items:
>> 1. Complete sound reinforcement systems including speakers, amplifiers, processors, mixers, outboard processing equipment, and other related equipment.
>> 2. Cables and control wiring.
>> 3. Speaker rigging hardware
>> 4. Equipment racks, Portable Cabinetry

**C.  Did the District Court Err in Finding that Subcontractor and Sub-subcontractor Had Entered into a Sub-subcontract for $129,430?**

The district court found that Subcontractor and Sub-subcontractor had entered into an express contract under which Sub-subcontractor agreed to perform specified work on the construction project for the sum of $129,430.  Surety contends that the trial court's findings are erroneous because the evidence fails to show that there was any meeting of the minds regarding the scope of the work to be performed or the contract price.

A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous.  *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002); Idaho R. Civ. P. 52(a).  When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court.  137 Idaho at 856, 55 P.3d at 310.  It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses.  *Id*.  On appeal, this Court examines the record to see if challenged findings of fact are supported by substantial and competent evidence.  *Id*.  Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven.  *Id*.

In this case, Sub-subcontractor submitted its revised bid dated March 10, 2004, which set forth in detail the scope of the work by reference to the applicable sections of the "General Conditions of the Contract for Construction, Division-16 Basic Electrical Materials and Methods," and stated the contract price.  On June 14, 2004, Subcontractor accepted the bid by fax in which it stated "Please accept this fax as our intent to enter into a contract" and asked Sub-subcontractor to begin work "ASAP."  The district court found that this fax constituted an acceptance of Sub-subcontractor's bid.  The parties later revised the contract price and scope of work as reflected in Subcontractor's fax dated June 22, 2004, and Sub-subcontractor's written reply dated June 29, 2004.

---

5.  Control Equipment

[P]rovide a Television Distribution system for the transmission of cable channels, distribution of VCR programming, and distribution of program origination on a sub-channel from any system distribution outlet.

"A meeting of the minds is evidenced by a manifestation of intent to contract which takes the form of an offer and acceptance." *Barry v. Pacific West Constr., Inc.*, 140 Idaho 827, 831, 103 P.3d 440, 444 (2004). In *Barry*, we upheld the finding of a meeting of the minds based upon a subcontractor's bid "on Sections 09260 and 09511" of the written specifications and general contractor's acceptance by offering the subcontractor "the job 'it had bid.'" *Id*. The district court's finding that the parties had a meeting of the minds in this case is supported by substantial and competent evidence.

Surety also contends that as a matter of law there could be no contract because the Subcontractor and Sub-subcontractor both testified that they intended to reduce their agreement to a signed writing. The district court found that Subcontractor asked Sub-subcontractor to begin work without a signed contract, and Sub-subcontractor habitually did this type of work without a signed writing. The court found that "it is obvious the parties felt comfortable beginning work without a formal written contract signed by both parties, and that both parties felt the covenants and promises were spelled out." As we stated in *Barry*, *id*., "A formal written contract was contemplated between the parties, but the fact that one was not executed is not fatal to the agreement." We uphold the district court's finding that the parties had entered into a contract under which Sub-subcontractor was to perform the work set forth in its writing dated June 29, 2004, for the sum of $129,430.00.


**D. Is Either Party Entitled to an Award of Attorney Fees on Appeal?**

Surety requests an award of attorney fees pursuant to Idaho Code § 12-121. Because Surety is not the prevailing party on this appeal, it cannot be awarded attorney fees under that statute. *Scott Beckstead Real Estate Co. v. City of Preston*, 147 Idaho 852, 857, 216 P.3d 141, 146 (2009).

Sub-subcontractor requests an award of attorney fees pursuant to Idaho Code §§ 54-1929, 12-120(3), and 12-121. Idaho Code § 54-1929 provides, "In any action brought upon either of the bonds provided herein, . . . the prevailing party, upon each separate cause of action, shall recover a reasonable attorney's fee to be taxed as costs." Relying upon *LeGrand Steel Products, Co. v. A.S.C. Constructors, Inc.*, 108 Idaho 817, 819, 702 P.2d 855, 857 (Ct. App. 1985), and *Eimco Division of Envirotech Corp. v. United Pacific Ins. Co.*, 109 Idaho 762, 765, 710 P.2d

672, 675 (Ct. App. 1985), Surety argues that attorney fees are not awardable on appeal pursuant to Idaho Code §54-1929.

In *LeGrand*, the Court of Appeals held that attorney fees were not awardable on appeal under Section 54-1929. It reasoned, "[T]he statute is silent concerning awards of fees on appeal. We note that the mechanics' lien statute, I.C. § 45-513, is similarly silent and has been held not to authorize fee awards on appeal. Accordingly, we decline to make such an award here, under I.C. § 54-1929." 108 Idaho at 819, 702 P.2d at 857 (citation omitted). *Eimco* adopted the same reasoning. That reasoning is erroneous.

This Court held that attorney fees were not awardable on appeal under the mechanics' lien statute because when our legislature copied that statute from California, it deleted the provision authorizing the award of attorney fees on appeal. As this Court explained in *Hendrix v. Gold Ridge Mines*, 56 Idaho 326, 337-38, 54 P.2d 254, 258 (1936) (emphasis in original):

> We do not think these cases [from California awarding attorney fees on appeal] apply under our statute for the reason that the California statute in force when these cases were decided specifically provided for the allowance of "reasonable attorneys' fees in the superior and supreme courts." (Sec. 1195, Vol. 3, Deering's Code (1885)).
> It is significant that our statute, which was adopted in 1893 (1893 Sess. Laws, p. 54, sec. 12), and was evidently copied from the California lien statute, omitted the provision for allowance of attorney's fees in the *supreme court*. The fact that this provision was omitted from our statute leads to the conclusion that it was not intended that such practice should prevail here.
> We, therefore, hold that our statute only authorizes the collection of such fees for foreclosure of liens in the district court.

There is no similar legislative history indicating that the legislature did not intend for attorney fees to be awarded on appeal under Idaho Code § 54-1929. In 1965, the legislature enacted the Public Contracts Bond Act, I.C. §§ 54-1925 through 54-1930. Ch. 28, §§ 2-6, 1965 Idaho Sess. Laws 43, 43-46. It copied Sections 54-1926 and 54-1927 from the Miller Act. *City of Weippe ex rel. Les Schwab Tire Centers of Idaho, Inc. v. Yarno,* 96 Idaho 319, 321, 528 P.2d 201, 203 (1974). The Miller Act did not include a provision authorizing the award of attorney fees, 49 Stat. 793, 793-95 (1935), but the legislature included an attorney fee provision in the Bond Act, Ch. 28, § 5, 1965 Idaho Sess. Laws 43, 46, codified at I.C. § 54-1929.

In 1909, the legislature enacted the prior statute requiring a payment bond on public works projects. Act approved March 13, 1909, § 1, 1909 Idaho Sess. Laws 165, 1165-66. That

statute had likewise been copied from a federal law, *State ex rel. White v. Storm*, 49 Idaho 246, 253, 287 P. 689, 692 (1930), that did not include a provision for awarding attorney fees, 28 Stat. 278, (1894), as amended 33 Stat. 811 (1905).  In 1929, the legislature amended the statute to add an attorney fee provision, which stated, "In any action brought under this section the court shall allow the claimant or plaintiff such attorneys fees as the court shall deem reasonable."  Ch. 254, § 1, 1929 Idaho Sess. Laws 518, 520.  That statute was last codified as Idaho Code § 45-502.  In *Minidoka County ex rel. Detweiler Brothers, Inc. v. Krieger*, 88 Idaho 395, 418, 399 P.2d 962, 977 (1965), we held that Section 45-502 authorized the award of attorney fees on appeal.

With respect to whether attorney fees are allowable on appeal, there is no significant difference between the wording of former Idaho Code § 45-502 and Idaho Code § 54-1929. Former Section 45-502 authorized awarding "the claimant or plaintiff such attorneys fees as the court shall deem reasonable," and Section 54-1929 provides for awarding "the prevailing party . . . a reasonable attorney's fee to be taxed as costs."  There is nothing indicating that the legislature intended to limit awards of attorney fees under Section 54-1929 to the trial court.  Indeed, in *Consolidated Supply Co. v. Babbitt*, 96 Idaho 636, 640-41, 534 P.2d 466, 470-71 (1975), this Court awarded attorney fees on appeal pursuant to Idaho Code § 54-1929.

Because Sub-subcontractor is the prevailing party on appeal, it is entitled to an award of attorney fees under Section 54-1927.  We need not address whether it would also be entitled to an award of attorney fees under Sections 12-120(3) and 12-121.

## IV.  CONCLUSION

We affirm the judgment of the district court.  We award costs on appeal, including a reasonable attorney fee, to respondent.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.